The objective of this suit is to annul a lease of the SW 1/4 of the SW 1/4, Section 26, Township 7 North, Range 1 East, in Grant Parish. The land is entirely owned by Herman P. Lee, save for 1/5th interest in the gravel therein, which was reserved by his father, Joseph T. Lee, in act of sale by him to the son on April 26, 1941. Joseph T. Lee owned only a 1/5th interest in the land.
On April 21, 1942, Herman P. Lee, at the time overlooking said reservation, leased the land unto O.L. Abernathy, doing business as Pollock Gravel Company, made defendant, for the purpose of "exploring, prospecting and mining for and producing gravel and sand" therefrom. Right-of-way privileges needful to operations under the lease were stipulated therein as well as other terms and conditions, including the price of five cents (5¢) per cubic yard for sand and pit-run gravel.
Developments under the lease were not immediately begun. Herman P. Lee was inducted into the military service of the Government in November, 1942, was stationed a long way from his home in Grant Parish, and, therefore, was not in a position to personally keep in touch with activities under the lease. These began in July following. In the latter part of that month he visited his home on furlough and learned that 8,658 yards of pit-run gravel had been removed from the land but no portion of the royalty price had been paid. Defendant then gave him his check for the amount. This was on July 31st. The check was dishonored when presented for payment.
In the meantime Herman P. Lee had returned to military service. As soon as Mr. Abernathy learned of the check's dishonor he got another one for like amount in lieu of the first one, and had it tendered to Joseph T. Lee on August 10th for his son's account. Acceptance of the check was declined. It was then delivered to plaintiffs' counsel who kept it for some thirty days. Under an agreement with defendant's counsel, for the protection of both sides and without prejudice, the check was cashed Herman P. Lee testified that the proceeds had been delivered to him. However, on August 20th it is admitted, defendant's counsel offered to tender to plaintiffs' counsel the cash necessary to redeem the first check, but when informed that the tender would be refused he made no further efforts in that connection.
The two Lees, father and son, instituted this suit. The primary assault against the lease's legality is buttressed upon the undisputed fact that Joseph T. Lee owns a 1/5th interest in the gravel involved; that he did not authorize or join in the lease nor has he approved or ratified the same since its execution.
In the first alternative, plaintiffs attack the lease contract on the grounds that it contains a potestative condition; and, secondly, in the alternative, the lease is alleged to now be null and void because of defendant's delay in paying the royalty on the 8,658 yards of gravel removed.
The lease is also attacked and alleged to be now null and void because the rights of the lessee thereunder have been assigned or sub-let to another person who actually mined for and removed the gravel. This attack is based upon the erroneous conclusion that the right to assign or sub-let is inhibited by the terms of the lease. No such inhibition appears therein, but, on the contrary, the right to transfer and assign the lease is expressly therein granted to the lessee.
Defendant filed exceptions of no cause and no right of action, and a plea of estoppel as against Joseph T. Lee. Facts, as a basis for the plea are set forth. These exceptions and the plea were all, by agreement, referred to the merits. Answering, defendant denies the right of plaintiffs or either of them to have the lease declared *Page 672 
null and void. Its legality and effectiveness are specifically averred. The facts pertinent to the issuance and delivery of the check intended to pay the royalty on gravel removed, its dishonor, reasons therefor, and the issuance and tender of another check in lieu thereof, are all set forth in detail in the answer.
Judgment was rendered for plaintiffs as prayed for by them, and defendant prosecutes appeal.
The plea of estoppel is not well founded. The testimony does not sustain it.
We learn from plaintiffs' brief that the lower court held the lease to be null and void under the primary attack against it, to-wit:
That Joseph T. Lee did not join therein and had not subsequently ratified it.
It is certain Herman P. Lee may not be heard to assail the lease's validity on the ground that it embraces a greater interest in the gravel than he owns. He warranted, impliedly at least, that he owned all the gravel and sand in and under the tract (and he did own all the sand). Rather than be permitted to attack his own solemn contract, the law is clear that it is his obligation under his warranty, to defend it. He accepted, prior to the time gravel was produced, monthly rentals far in excess of the amounts due at the time, and, so far as the record discloses, he has not tendered back to defendant any part thereof. Surely, as to the sand, all of which he owns, the lease was originally valid in toto and unless amenable to other attacks it is still valid.
And since Joseph T. Lee was not a party to the lease, he is without right to have it declared null and void simply because his interest in the gravel was not excepted therefrom, but was inadvertently included therein. His interest in the gravel was unaffected by his son's unauthorized act. The extent of relief to which he is entitled in this suit is simply to have that interest recognized; not to have the contract, to which he was not a party, set aside in full.
The lease is not vulnerable to the charge that it contains a potestative condition as regards the obligations of the defendant. Such a condition is defined by Article 2024 of the Civil Code, as follows:
"The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."
To aid in a discussion of this phase of the attack against the lease, we epitomize the allegations touching same:
That defendant is not obligated to mine or remove any gravel whatever during the term of the lease nor is he obligated at any specified time to pay for gravel or sand removed; that he is not obligated to pay for sand and gravel removed but not sold by him, regardless of the quantity.
The term of the contract of lease is fixed at five years, beginning May 15, 1942. The yardage price for pit-run and wash gravel and sand is definitely fixed, but the manner of payment of the royalty is not so fixed. The lessee is not unequivocally obligated to mine for sand or gravel but is expressly obligated to pay $5 per month for every month gravel and/or sand is not mined from the land. In this respect the lease is not unlike the common commercial oil and gas lease which fixes a maximum term for its duration and preserves the effectiveness of the same, prior to beginning of operations thereunder, through the payment by the lessee or his assignee of specified annual rentals. The parties so understood the present lease. Defendant has been generous in making rental payments. In this connection the lease provides that while production is in progress no rental shall be due. Such stipulations in contracts of this character are legal beyond any dispute.
Conceding, arguendo, that on this score there was lack of mutuality, it is now too late to invoke the court's aid in the effort to have such declared. Defendant has already opened a gravel pit on the land whether obliged to do so or not. This was the primary purpose of the lease. A potestative condition is only voidable, not absolutely void. The action of the parties or a party to a contract affected by such a condition may be such as to efface the original infirmity flowing therefrom. Oliver et al. v. Home Service Ice Company, Inc., La.App., 161 So. 766.
The lessee obligated himself to pay for all gravel removed by him except such as might be needed and used to construct a road, named in the contract, to the closest hard surfaced highway, and also such gravel "used as incident to the running of the pit or plant." The lease further provides, following this quotation, "but all gravel and sand mined and sold or used for the purpose *Page 673 
of sale shall be subject to the royalty payments as hereinabove specified." It is clear defendant was obligated to pay for all gravel mined on the land and removed therefrom except that included in the two stipulations above mentioned.
The omission from the lease contract of the exact time and place the royalty payments were to be made certainly could not unfavorably affect its validity. If the lessor so desires, we think, he could legally object to the removal of any sand or gravel from the land until the royalty is paid. However, the rule applicable to the payment of ordinary rent, where the contract is silent as to the manner of payment thereof, has application to a case of this character unless the parties by independent action determine otherwise. As to such rents the court construing Article 2157 of the Civil Code held that the presumption arose that the lessor will call for his rents. Saxton v. Para Rubber Company of Louisiana, 166 La. 308, 117 So. 235.
At considerable expense defendant opened a gravel pit on the land in July, 1943. He sold the 8,658 yards to a party who removed it from the pit. This party had not paid defendant for the gravel when defendant gave young Lee, on July 31st, the check for royalty due him. It was this purchaser's check that was tendered to Joseph T. Lee on August 8th, prior to filing this suit, in lieu of the dishonored one. Joseph T. Lee would have been warranted in accepting this check as his son's agent as he had previously accepted a rental check of $100 given by defendant for the son's account, had collected same and delivered the proceeds to the son, and the son testified that his father was authorized to and did look after his banking business, making deposits for his account.
Defendant had good reason to believe the dishonored check would be paid when presented. It was drawn on a bank in Lake Charles, Louisiana, in which he carried two different accounts. He does an annual business as contractor in excess of $60,000. He acted promptly when first informed of the cheek's dishonor. He only learned of this when he returned to the City of Alexandria following a few days' absence after issuance and delivery of the check to Herman P. Lee.
It would be extremely inequitable in view of all the facts and circumstances of the case, to adjudge the lease null and void because of the brief delay in paying the rentals. We decline to so hold.
For the reasons herein assigned, the judgment appealed from, insofar as it annuls the lease to the extent of Herman P. Lee's interest in the sand and gravel involved, is reversed and set aside; but, said judgment is affirmed insofar as it annuls said lease to the extent of Joseph T. Lee's one-fifth (1/5th) interest in said gravel, such interest being hereby recognized. Plaintiff, Herman P. Lee, is cast for all costs.