355 So.2d 271 (1977)
HOUSING AUTHORITY OF the CITY OF LAKE CHARLES, Louisiana, Plaintiff-Appellee,
v.
Albert MINOR, Defendant-Appellant.
No. 6232.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1977.
Rehearing Denied January 12, 1978.
Writ Refused February 24, 1978.
*272 Raggio, Farrar, Cappel & Chozen, by Frederick L. Cappel, Lake Charles, for defendant-appellant.
Charles S. King, Lake Charles, for plaintiff-appellee.
Before WATSON, GUIDRY and FORET, JJ.
GUIDRY, Judge.
Defendant, Albert Minor, appeals from a judgment in favor of plaintiff, Housing Authority of the City of Lake Charles, Louisiana (Housing Authority), cancelling a lease agreement existing between these parties, awarding plaintiff certain sums claimed to be due as past due rent and other charges and condemning defendant to vacate the leased premises.
The sole issue presented is whether the judgment rendered in this case was just and proper under the circumstances.
The facts giving rise to this suit are not disputed. The Housing Authority is the lessor and Albert Minor is the lessee of certain property located at 1827 Rena Street in the City of Lake Charles, Louisiana. The written contract of lease between these parties provides for monthly rental payments to be made on the first day of each calendar month, and incorporates by reference certain written policies allowing a grace period of six working days to allow all tenants to pay their monthly rent. These written policies of the Housing Authority contain provisions to the effect that any bad check received by the Housing Authority which is not made good by 4:30 P.M. on the sixth working day of each month will be considered the same as not paying the rent and surcharges for that particular month. Along with other numerous terms and conditions, the written lease contract allows termination of the lease by the Housing Authority at any time for serious or repeated violation of any terms of the lease or for any other good cause.
On Monday, May 9, 1977, defendant's wife paid the rent due for the month of May, 1977 with a third party check from defendant's employer. This constituted *273 timely payment of the rent in accordance with the grace period, as the check was tendered on the sixth working day of the month. However, on Friday, May 13, 1977, the check was returned to the Housing Authority marked "RETURNED NOT SUFFICIENT FUNDS". On that same day, a written notice to vacate the premises for non-payment of rent and/or other charges then due was hand delivered to defendant's wife. Defendant was unable to make the check good that day because the Housing Authority office had closed when he returned home. On the following Monday, May 16, 1977, defendant's wife again paid the rent which was accepted by the Housing Authority and deposited in an escrow account pending final disposition of the eviction proceedings.[1]
On June 6, 1977, a petition was filed in the City Court of Lake Charles by the Housing Authority seeking judgment for certain sums of money allegedly due under the terms of the lease, cancellation of the lease and eviction of the defendant. After trial on the merits, judgment was rendered granting plaintiff the relief prayed for, subject to a credit for all sums of money of defendant presently held by plaintiff in escrow.
We note at the outset that while ordinarily a lessor may dissolve a lease for failure on the part of the tenant to promptly pay the rent when due, it is also well settled that the right to dissolve a lease is subject to judicial control according to the circumstances. Baham v. Faust, 333 So.2d 261 (La.App. 1st Cir. 1976); Farmers Gas Company, Inc. v. LaHaye, 195 So.2d 329 (La.App. 3rd Cir. 1967); Lemoine v. Devillier, 189 So.2d 694 (La.App. 3rd Cir. 1966, writ refused); Brewer v. Forest Gravel Co., Inc., 172 La. 828, 135 So. 372 (La.1931); Edwards v. Standard Oil Co. of Louisiana, 175 La. 720, 144 So. 430 (1932) and cases therein cited.
As we interpret the above cited jurisprudence, our courts, on the basis of equity, are vested with discretion under some circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him.
In Lee v. Abernathy, 19 So.2d 670 (La. App. 2nd Cir. 1944, certiorari refused), defendant's royalty check to plaintiff was dishonored when presented for payment. As soon as defendant learned of the check's dishonor, he obtained another one and tendered same to plaintiff's father for credit to plaintiff's account. Acceptance of the check was declined. The check was later cashed without prejudice in accordance with an agreement between the parties for the protection of both sides. Plaintiffs brought suit to annul the lease, alleging in the alternative, that the lease was null and void because of defendant's delay in paying the royalty. The circuit declined to grant cancellation of the lease, stating;
"Defendant had good reason to believe the dishonored check would be paid when presented. It was drawn on a bank in Lake Charles, Louisiana, in which he carried two different accounts. He does an annual business as contractor in excess of $60,000. He acted promptly when first informed of the check's dishonor. He only learned of this when he returned to the City of Alexandria following a few days' absence after issuance and delivery of the check to Herman P. Lee.

It would be extremely inequitable in view of all the facts and circumstances of the case, to adjudge the lease null and void because of the brief delay in paying the rentals. We decline to so hold." (emphasis added)
In Edwards v. Standard Oil Co. of Louisiana, supra defendant mailed a check on July 10th for the rental payment due July 15th; but, owing to some oversight, or fault in mail deliveries, the check did not reach plaintiff until July 21st. Plaintiff returned the check on the same day. Plaintiff brought suit to have the defendant vacate the premises for non-payment of the rent. Our Supreme Court in declining to grant plaintiff relief stated:

*274 "Moreover, where `defendant was offered its money, and could have had it before it even brought suit to annul the contract (lease),' he cannot annul the lease for alleged nonpayment of the rent. `Our law does not contemplate that contracts shall be annulled by one party where the other is able and willing to perform his own part of it as soon as demanded of him'. Hemsing v. Wiener-Loeb Grocery Co., 157 La. 189, 102 So. 303, 304.
Hence, although `it is true that ordinarily a lessor may dissolve a lease for failure on the part of the lessee to pay the rent promptly when due, (nevertheless) the right to dissolve a lease is subject to judicial control according to circumstances.'" (citations omitted)
In Farmer Gas Company, Inc. v. LaHaye, supra, the rental payment due August 15th under the terms of a written lease was not timely paid in spite of notice to plaintiff that the rent due on that date had to be paid promptly, despite whatever custom had existed in the past of accepting the rent late. On September 23rd, defendants gave written notice to vacate the premises for failure to pay the rent. On October 4th, plaintiff mailed a check to defendants for payment of the rent. Defendants refused to accept the check and returned same. On November 16th, plaintiff notified defendants of its desire to exercise its option to purchase the property in accordance with the terms of the written lease. This Court, after careful consideration of the circumstances of that case, concluded that the lease in question should be cancelled. However, in view of the numerous equitable considerations presented, this Court allowed cancellation only as of a date subsequent to plaintiff's exercise of its option to purchase. The court concluded that plaintiff was entitled to specific performance of this option.
In the instant case, defendant contends that the circumstances presented here warrant an exercise of this Court's equitable discretion. We agree.
Our careful examination of the record discloses that the defendant and certain members of his family (now totaling sixteen persons) have resided in this housing project for approximately nine years. During this period of time, there has only been one previous occasion when defendant was late with his rental payment. This occurred about seven years ago, when defendant was waiting to receive a welfare check. Defendant has worked for his present employer for about two years. He had previously been paid by check from his employer and had never had one of these checks returned before this incident. Defendant normally cashes his paycheck at a bank or at the place of business of a local merchant.
Defendant usually gets paid every Friday. On Friday, May 6, 1977, it was late when defendant got off work. This prevented him from cashing his pay check as was his normal practice. Instead, defendant's wife paid the rent on Monday, May 9th with the check bearing defendant's endorsement. Defendant received notice on Friday, May 13th the check had been returned, however, by the time he got home with the money, the Housing Authority office was closed. Defendant's wife subsequently paid the rent on Monday, May 16th. The money was accepted by the Housing Authority and she was given a receipt stating that the money was being deposited in escrow. Defendant continued to occupy the premises at the time of trial and presumably continues to do so during the pendency of this appeal. The Housing Authority appears to have continued the practice of accepting defendant's rental payments, depositing same in a so-called "escrow account".
Considering the above, we conclude that defendant was the victim of an unfortunate set of circumstances, which he could not have possibly foreseen and over which he had no control. Defendant made timely presentment of the rental payment during the grace period. He had no indication that the check from his employer with which he paid the rent was no good. He had never had one of these checks returned in the previous two years that he had worked with this employer. When notified that the check had in fact been returned, he proceeded with due haste to try to remedy the *275 situation. The rent was in fact paid by the defendant's wife and accepted by the Housing Authority as soon as it became possible to do so. Defendant did not cause or contribute to the unfortunate set of circumstances which gave rise to this suit, and considering the equitable considerations presented here, we will grant defendant the relief that he seeks.
In view of these findings, we do not reach the question as to whether or not the acceptance by the lessor of the rental payments prior to filing of the eviction proceedings (even though under an "escrow receipt") would pretermit the right of the lessor to demand cancellation of the lease and eviction of the tenant.
For the above and foregoing reasons, the judgment of the City Court of Lake Charles, Louisiana, is reversed and set aside and it is now ordered that plaintiff's demands be rejected, subject to the right of the Housing Authority to apply the funds deposited in the escrow account to the rental and surcharges accrued under the aforesaid lease since the institution of this suit. Costs at the trial level and on appeal are to be borne equally between plaintiff and defendant.
REVERSED AND RENDERED.
NOTES
[1] The suit for eviction was not filed until June 6, 1977. However, defendant had been served with a notice to vacate three days prior to this payment.