567 So.2d 1166 (1990)
Jimmy Dale Bennett CURLEE, Plaintiff-Appellant,
v.
James A. CURLEE, Defendant-Appellee.
No. 89-441.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Van H. Kyzar, Natchitoches, and Allen D. Smith, Ball, for plaintiff-appellant.
Bernard Kramer, Alexandria, for defendant-appellee.
Before GUIDRY, STOKER and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, Jimmy Dale Curlee Tulley, the ex-wife of defendant, James A. Curlee, appeals a judgment of the trial court denying her claim to a one-half interest in certain immovable property.
Plaintiff and defendant were married May 30, 1963 and legally separated February 25, 1971. Following their legal separation, the parties partitioned the property which then formed their community of acquets and gains with appellant acquiring the former community residential property in Judie's Subdivision in Rapides Parish. Subsequently, the parties reconciled but did not reestablish the community of acquets and gains.[1] After their reconciliation, the parties resumed living as man and wife in the Judie's Subdivision home. Thereafter, they became interested in a home in Sherwood Forest Subdivision owned by Mr. and Mrs. Richard F. Baker. On March 12, 1973, the Curlees and the Bakers entered into transactions which resulted in the two couples essentially trading houses. By an act of cash sale dated March 12, 1973, the Curlees conveyed the Judie's Subdivision property to Richard F. Baker, husband of Sharon Ramsey, for a recited cash consideration of $17,000.00. On the same date, Richard F. Baker conveyed the disputed property to James Curlee, appellee, for a recited cash consideration of $4,500.00 and the assumption by the latter of the balance then due ($34,162.53) on a mortgage note due First Federal Savings & Loan Association of Alexandria, Louisiana. The parties were divorced on February 12, 1986. *1167 Thereafter, plaintiff-appellant instituted this suit seeking to be recognized as owner of a one-half interest in the Sherwood Forest property.
Appellant contends that the transactions of March 12, 1973 constituted a joint venture of the Curlees to acquire the Baker property, i.e., a trade by her of the equity in her Judie's Subdivision home for the equity in the Baker home with Mr. Curlee assuming the balance of the Baker mortgage. In return, the Bakers received appellant's home free and clear. This "trade" scenario was corroborated to some extent by the testimony of Richard Baker. Appellee, on the other hand, contends there was no joint venture agreement and that the transactions of March 12, 1973 were simply cash sales, as indicated by the sales documents introduced into evidence. Furthermore, defendant-appellee urges that in 1973, any attempt by a husband and wife to enter into a joint venture was null and void because of the then existing prohibition against husbands and wives contracting with each other. Additionally, appellee argues that any joint venture agreement relating to the ownership of immovable property must be written and in this case there was no written document of any kind.
Plaintiff argues that joint venture agreements are governed by partnership law and La.C.C. art. 2806 provides that when a partnership agreement is not in writing, immovable property purchased by the partnership is acquired by the partners as co-owners. She contends that after the repeal of La. C.C. art. 1790 in 1980, that the joint venture agreement previously entered into by she and her husband was subject to ratification and that the joint listing by the parties of the disputed property with a realtor on January 10, 1986 confirmed the previously null agreement.
The trial court presumably accepted the defendant-appellee's testimony regarding the nature of the March 12, 1973 transactions and rejected appellant's claim of joint venture. We affirm, finding no clear error in the trial court's factual findings or legal conclusions.
In a case factually apposite, our brethren of the Second Circuit disposed of contentions similar to those advanced by appellant stating:
"Plaintiff next contends that if the community of acquets and gains between the parties was not reestablished, she nevertheless owns a one-half interest in the property by virtue of a joint venture agreement between herself and her husband. A similar contention was rejected by the court in Corkern v. Corkern, supra.[2] Joint ventures are governed generally by the laws applicable to partnerships. Marine Services, Inc. v. A-1 Industries, Inc., 355 So.2d 625 (La.App. 4th Cir.1978); American Fidelity Fire Ins. Co. v. Atkison, 420 So.2d 691 (La. App. 2d Cir.1982). A partnership is a synallagmatic and commutative contract and can only be created by the consent of the parties. LSA-C.C. Arts. 2801 and 2805. The evidence in this case does not establish that Mr. and Mrs. Freeman agreed or consented to engage in a partnership or joint venture. Furthermore, such an agreement or contract between the spouses was prohibited by LSA-C.C. Art. 1790, as it read prior to its amendment by Act 627 of 1978 which never became effective and Act 711 of 1979, which repealed Act 627 of 1978 and became effective January 1, 1980.
Plaintiff argues that the incapacity of a husband and wife to contract with each other was eliminated by the amendments to Article 1790, and by the positive provisions of new Article 2329, added by Act 709 of 1979, which provides that spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy. Plaintiff cites comment (a) following Article 2329 which provides:
"(a) Spouses are free to contract with each other during marriage as to all matters that are not prohibited by public policy. For example, they may sell or lease property to each other; they may enter into a compromise agreement; they may even employ *1168 each other. The incapacities based on marital status, contained in Article 1790 of the 1870 Code, have been removed. See Acts 1979, No. 711, § 1."
Plaintiff urges that the removal of the incapacity to contract should be applied retroactively to spouses who had entered into contracts with each other prior to January 1, 1980, the effective date of the amendments to the Civil Code, so as to give effect to and ratify such contracts.
The amendments to the Civil Code cannot be given such retroactive effect. Acts 709 and 711 of 1979 contain no provisions expressly providing for or indicating such retroactive effect. Act 627 of 1978, § 9, contains transitional or retroactivity provisions which might or might not be applicable to the joint venture agreement alleged to exist in this case, but that act was repealed in its entirety by Act 711 of 1979 and the latter act does not contain the provisions contained in the 1978 act. Contracts between husband and wife made in contravention of the former prohibition under Article 1790 were relative nullities and subject to ratification after the disability ceased. See King v. King, 390 So.2d 250 (La.App. 3d Cir.1980); Monk v. Monk, 376 So.2d 552 (La.App. 3d Cir.1979)....
Absent ratification by the parties, any agreement which may have existed was not ipso facto and retroactively ratified by the legislative removal of the incapacity of a husband and wife to contract with each other." (footnotes omitted)
Freeman v. Freeman, 430 So.2d 673 (La. App. 2d Cir.1983), writ denied, 435 So.2d 449 (La.1983).
We find no clear error in the trial court's conclusion that the evidence in this case falls short of establishing by a preponderance of the evidence that the parties agreed or consented to engage in a partnership or joint venture to acquire the Sherwood Forest property. Therefore, the issues concerning validity of such an agreement and ratification thereof are moot. Finally, even if the Judie's Subdivision property, owned by appellant, constituted a part of the consideration for acquisition of the Sherwood Forest property, this fact cannot alter the result reached by the trial court, i.e., plaintiff-appellee's sole ownership of the disputed property, which is dictated by positive law. Where the rights of parties are provided for by express law, equity may not intervene. La.C.C. art. 4.
Accordingly, for the reasons stated above, the judgment appealed from is affirmed. All costs of this appeal are taxed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] Under C.C. art. 155 a judgment of separation from bed and board terminates the community of acquets and gains. Prior to January 1, 1980 (Act 711 of 1979), upon reconciliation of the spouses, the community was not reestablished unless the parties executed an authentic act and recorded same in the conveyance records of the parish where the parties were domiciled. Article 155 now provides (Act 525 of 1985) for automatic reestablishment of the community of acquets and gains upon reconciliation unless the spouses execute prior to reconciliation a matrimonial agreement that the community shall not be reestablished. Article 155 as now enacted is not subject to retroactive application.
[2] Corkern v. Corkern, 270 So.2d 209 (La.App. 1st Cir.1972).