593 So.2d 438 (1992)
ERGON, INC., Appellee,
v.
W.L. ALLEN, Sr., Appellant.
No. 23,160-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
Rehearing Denied February 21, 1992.
Malcolm Decelle, Jr., Monroe, for appellant.
Kneipp & Hastings by Donald L. Kneipp, Monroe, for appellee.
Before NORRIS, VICTORY and BROWN, JJ.
VICTORY, Judge.
Ergon, Inc. brought suit to expropriate a piece of land which it had leased since 1976 for the purpose of operating a compressor station. The landowner reconvened, asking the court to evict Ergon from his property for non-payment of rent in accordance with *439 the terms of their written lease. From a judgment declaring the lease valid and enforceable, the landowner has appealed. We affirm in part and reverse in part.

FACTS
W.L. Allen, Sr. owns a piece of property located in Union Parish which Ergon, Inc. has leased since May 26, 1976. Because Ergon is in the business of marketing and piping natural gas, it constructed a compressor station on the leased property to help transport the gas to the Texas Gas Transmission.
Ergon's wells are located in the Arkadelphia formation which produces natural gas with extremely low pressure, 25 pounds per square inch (PSI). Ergon sells its gas to Texas Gas Transmission, which operates its pipeline at 600 to 800 PSI. In order to transport the gas from the wells to the Texas gas line, the gas must be significantly compressed so that it can flow in the high pressured transmission line. When compressed, the gas rapidly heats, and therefore, requires a mile of pipeline between the station and the Texas gas line to allow the gas to sufficiently cool before entering the line. Ergon grosses $3,285,000 per year in sales from the 360 wells serviced by the compressor station on Allen's land.
The rental terms contained within the parties' Compressor Site Agreement provide for an annual rental payment on or before May 26th of each year. The lease also provides for $250 rent per year for the primary term, increasing to $300 per year for the second term and $350 per year for each term thereafter. The lease has an original term of five years, with three optional five-year terms.
Ergon failed to pay the $350 rent on or before May 26, 1986.[1] At trial, Mr. Kitchingham, general manager for Ergon, explained that he thought rental payments were paid by the home office in Jackson, Mississippi. He stated that his predecessor, Richard Cox, had set up an automatic system whereby the Jackson office paid the annual rental payments. Prior to his retirement, Cox transferred the payment responsibility for this lease from Jackson to the Monroe office. Kitchingham was not aware of the change until he received Allen's termination and eviction letter dated March 24, 1987, based on non-payment of rent due May 26, 1986. At this point, Kitchingham contacted Ergon's attorney and instructed him to tender the past due rental payment immediately. The past due rent was tendered on March 27, 1987, but Allen refused acceptance.
On August 20, 1987, following unsuccessful settlement negotiations, Ergon filed a petition to expropriate the property, stating that Allen no longer wished to lease the land. Allen subsequently reconvened, praying that Ergon be evicted from the property for non-payment of rent and that all improvements remain on the land because they had not been removed within 180 days of the end of the lease.
In oral reasons and at Ergon's written request in answer to the reconventional demand, the trial court invoked the doctrine of judicial control of the termination of leases, citing Atkinson v. Richeson, 393 So.2d 801 (La.App. 2d Cir.1981), and refused to allow the lease to be terminated. Although the trial judge found the rent had not been paid timely per the written lease, he found Ergon gave a reasonable explanation for the delinquent May 1986 rental payment. The judge also found that all parties intended for the lease to continue for at least 15 years, and that the cancellation of the lease would cause substantial financial harm to Ergon and others, including royalty owners and consumers. He also orally denied the plaintiff's petition for expropriation, reasoning that Ergon failed to prove a legal necessity for the taking because the lease was still in effect.
A written judgment, approved by the attorneys of record, was signed declaring the lease valid and enforceable and ordering Ergon to pay past due rentals, plus legal interest from May 26, 1986.

*440 DISCUSSION
Allen appealed, claiming the trial court erred in exercising judicial control over the lease. He asserts that the doctrine found in Atkinson v. Richeson, supra, does not apply to the facts of this case and is directly opposed to LSA-C.C. Art. 2712.
LSA-C.C. Art. 2712 provides that a lessee may be evicted from the property if he fails to pay the rent when it becomes due. However, it has been held by our supreme court that although a lessor may ordinarily dissolve a lease for failure of the lessee to pay rentals timely, this right is subject to judicial control according to the circumstances. Brewer v. Forest Gravel Co., 172 La. 828, 135 So. 372 (1931).
As we interpret the application of judicial control, Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him. See Lee v. Abernathy, 19 So.2d 670 (La.App. 2d Cir. 1944); Farmers Gas Co. v. LaHaye, 195 So.2d 329 (La.App. 3d Cir.1967); Housing Authority of City of Lake Charles v. Minor, 355 So.2d 271 (La.App. 3d Cir.1977), writ denied 355 So.2d 1323 (La.1978); and Tullier v. Tanson Enterprises, Inc., 359 So.2d 654 (La.App. 1st Cir.1978), reversed on other grounds, 367 So.2d 773 (La.1979). Although LSA-C.C. Art. 2712 would seem to mandate cancellation of a lease upon failure to comply with its terms, cancellation of leases is not favored in Louisiana law. Tullier v. Tanson Enterprises, supra; Stoltz v. McConnell, 202 So.2d 451 (La.App. 4th Cir.1967), writ denied 203 So.2d 559 (La.1967).
Cases which have applied judicial control of leases generally involve circumstances where a lessee has made a good faith error and acted reasonably to correct it. For examples see Brewer v. Forest Gravel Co., supra, (lessee withheld a portion of the rent to pay severance tax in good faith); Edwards v. Standard Oil Co., 175 La. 720, 144 So. 430 (1932), (rent was mailed on time, but was late due to faulty mail delivery); Baham v. Faust, 333 So.2d 261 (La. App. 1st Cir.1976), (rent was eight days late and lease provided no place for payment), Tullier v. Tanson Enterprises, Inc., supra, (rent was late due to a malfunction in the bank's transmittal device); Housing Authority of the City of Lake Charles v. Minor, supra, (rent was paid timely with third party check from lessee's employer, but the check was returned for insufficient funds); Atkinson v. Richeson, supra, (rent was 15 days late because husband thought wife had paid the rent).
Unlike the lessee in Atkinson v. Richeson, supra, Ergon failed to realize its error for approximately ten months, did not mail the rent check until it received the lessor's eviction letter, and had failed to pay the rent timely on a prior occasion. However, like the lessor in Atkinson, Allen did not demand the past due rent and give Ergon an opportunity to pay before taking action to terminate the lease and pursue eviction. Further, Ergon attempted in good faith to correct its mistake by tendering the rent immediately when notified of its delinquency.
Hugh McDonald, a petroleum engineer, testified at trial as to the necessity of Ergon's compressor station. According to McDonald, removal of the station would cause termination of all operations for an extended period of time. The risk of losing production from the shut-in wells would significantly increase due to the low pressure nature of the Arkadelphia formation. In addition, Kitchingham claimed that without the station, Ergon could not physically deliver gas to Texas, nor sell it for public use.
John Stone, a petroleum engineer and sole owner of an independent oil company, testified it would cost Ergon $2,000,000.00 to construct a new compressor station and $6,000,000.00 to remove and dismantle the existing one. He estimated Ergon would spend an additional $1,000,000.00 constructing new pipeline and obtaining right of way clearance. These figures do not include the actual loss of production sales during time the wells are non-operational.
After weighing the overwhelming affect on Ergon, royalty owners and ultimate consumers *441 against Allen's loss of $350.00 in annual rent for a ten month period, the trial court upheld the validity of the lease. Although Allen appears to be entitled to a rescission of the lease due to untimely payment of rent, we agree with the trial judge that under the unusual circumstances presented, the doctrine of judicial control of leases should be applied in this case.

DECREE
For these reasons, we affirm that part of the trial judgment declaring the lease valid and enforceable and ordering payment of the delinquent rent with interest. However, under the circumstances, we reverse that portion of the judgment dividing costs equally between the parties, and assess all costs in both the trial court and this court against Ergon, Inc.
AFFIRMED IN PART AND REVERSED IN PART.
BROWN, J., concurs with reasons.
BROWN, Judge, concurring.
Regardless of how it is termed, the doctrine of judicial control is founded in equity. The application of this doctrine in this case conflicts with LSA-C.C. Art. 4 and jurisprudence which provides that equity can only be applied when positive law is silent. Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116 (La.1974); Curlee v. Curlee, 567 So.2d 1166 (La.App. 3d Cir.1990); Lowry v. Decks and Tapes, Inc., 415 So.2d 632 (La.App. 3d Cir.1982).
Clearly positive law covers the circumstances of this case and thus, according to C.C.Art. 4 equity may not be used. The doctrine of judicial control of leases is supported in the jurisprudence but under these circumstances clashes with the principles governing when courts may resort to equity. This difference should be addressed and resolved.
Additionally, if equity is to be administered, we should recognize the disparity between the value of the compressor station and the nominal rent. Under the circumstances of this particular case, if the lease is not to be cancelled because of the great harm to third parties, then equity demands a significant increase in the annual rent.

APPLICATION FOR REHEARING
Before NORRIS, LINDSAY, HIGHTOWER, VICTORY and BROWN, JJ.
Rehearing denied.
NOTES
[1] This was the second time Ergon failed to pay rent timely. The first delinquency resulted in Allen's agreement to continue the lease after lengthy negotiations.