United States Court of Appeals,

Fifth Circuit.

No. 95-30451.

Leon CHASTANT, Plaintiff-Appellee,

v.

HEADRICK OUTDOOR INC., Defendant-Appellant.

April 18, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before LAY[*], HIGGINBOTHAM and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Headrick Outdoor, Inc. ("Headrick"), an outdoor advertising company, leased property from Chastant. When Headrick broke its habit of paying rent on the anniversary month of the leases, and payment was delayed for three successive years, Chastant served notice of default. Headrick appeals from the lower court's finding that Chastant had properly dissolved the leases when Headrick failed to timely pay rent. Finding no errors, we AFFIRM.

FACTS

Headrick, a company incorporated in Mississippi, leased the property on which its two billboards are located from plaintiff Chastant. Both billboards are located in Lafayette, Louisiana. One billboard is on Ambassador Caffery Parkway, and the other billboard is on Kaliste Saloom Road. Though the leases were executed on separate, identical lease forms, the Ambassador Caffery

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

lease was agreed upon on October 7, 1985, and the Kaliste Saloom lease was dated January 14, 1986. The forms provided for annual rentals, but did not indicate when those rentals were to be paid.

In the first several years of the leases, Headrick habitually paid in the anniversary month for a given lease: it would typically render its Ambassador Caffery rental payments every October and its Kaliste Saloom payments every January. Headrick's Chief Financial Officer, Milton Ray Cole, testified that Headrick paid in this manner, not out of a legal obligation to do so, but "as a matter of administering its business in good faith." Headrick claims that financial difficulties in the early 1990's forced it to pay after the anniversary month. For the lease rights to the Ambassador Caffery location, the 1990 rental check was dated November 21, 1990. The next year, 1991, the check was dated March 6, 1992. Headrick tried to pay for the term ending in 1992 with a check dated March 11, 1993. Similarly, with the Kaliste Saloom location, the rental checks were dated after the January anniversary: February 20, 1991; March 6, 1992; and March 25, 1993.

One month prior to paying the 1991 Kaliste Saloom rent, Headrick sent a letter explaining that it was facing some temporary financial difficulties and would be sending rent checks one month later than usual. The following year, in January of 1992, Chastant sent a letter to Headrick stating that rent was due in October and January respectively, and asking for timely payment; additionally, there was some testimony that Chastant had orally objected to the

2

late payments several times in the first three years of this decade. Finally, on March 23, 1993, Chastant sent a letter stating that because Headrick was in default for failure to pay the leases on time, he was canceling the leases and asking that the signs be removed within 10 days of receipt of the letter. At the same time, Chastant returned the two checks that Headrick had tendered for payment of the leases.

## DISCUSSION

*Standard of Review*

The standard of review for contract interpretation is *de novo,* but if the interpretation of the contract turns on the consideration of extrinsic evidence, such as evidence of the intent of the parties, the standard of review is clearly erroneous. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.,* 915 F.2d 986 (5th Cir.1990).

*Applicable Law*

Louisiana law governs the resolution of this diversity dispute. While a contract of lease is governed by certain rules, it is also subject to the rules of other conventional obligations. LA.CIV.C. art. 2668. Thus, the interpretation of a contract of lease, as with any other conventional obligation, is the determination of the common intent of the parties. *See* LA.CIV.CODE art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LA.CIV.CODE art. 2046. However, there are times when the common intent of the parties

3

cannot be gleaned from an otherwise binding contract because the contract made no provision for the particular situation at issue. Where this is the case, it must be assumed that the parties intended to bind themselves to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. LA.CIV.CODE art. 2054.

The billboard leases at issue in the case *sub judice* did not provide for when rent was due, though the leases themselves contained the three essential elements: the thing, the price, and the consent (*see* LA.CIV.CODE art. 2670). Based on the authority of article 2054, the trial court looked to the behavior of the parties themselves to imply a due date. Examining Headrick's own records, and the testimony of Headrick's representative that Headrick's longstanding practice was to pay in the month of the anniversary of the lease, the court concluded that the appropriate due date was the month of the lease anniversary. A careful review of the record shows that this finding is not clearly erroneous.

In addition to the gap filling provision of article 2054, the Civil Code further provides that a lessee may be expelled from the property if he fails to pay the rent when it becomes due. LA.CIV.CODE art. 2712. Thus, since rental payments were late on both leases, Chastant had a right to terminate them when he sent the March 23 letter placing Headrick in default and giving him ten days to vacate the premises. As the lower court found, the March 23 letter fulfilled the procedural requirement that, upon default, the lessor shall cause written notice to vacate the premises to be

4

delivered to the lessee, and that such notice shall allow no less than five days from the date of delivery to vacate. *See* LA.CIV.CODE PROC. art. 4701; *see also,* LA.CIV.CODE art. 2686 (requiring notice of termination when the parties have failed to agree upon the duration of a lease).

Headrick argues that equity demands that the leases not be regarded as terminated because lease cancellation is not favored in Louisiana and a lease will be dissolved only when a lessor proves clear entitlement to dissolution, citing *Housing Authority of Town of Lake Providence v. Burks,* 486 So.2d 1068 (La.App.2d Cir.1986). Moreover, Headrick argues, because of this disfavor, the right to lease cancellation is subject to judicial control, and in the absence of a specific agreement, Headrick should only have been required to pay at a reasonable time during the lease, citing *Ergon, Inc., v. Allen,* 593 So.2d 438, 440 (La.App.2d Cir.1992).

While it is true that, in Louisiana, a lessor's unilateral termination of a lease has been disfavored since the Civil Code of 1808,[1] it is also true that it has long been the law in Louisiana that a lessee may be expelled from the property if he fails to pay the rent when it becomes due.[2]

Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him.

---

[1]LA.CIV.C.ANN. art. 2689 (legal notice required before a lessor can evict a tenant from a house or room) (West compiled ed., 1972).

[2]LA.CIV.C.ANN. art. 2712 (West compiled ed., 1972).

*Ergon,* 592 So.2d at 440. A court may choose to exercise such discretion if a lessee has made a good faith error and acted reasonably to correct it: for example, where rent was late due to faulty mail delivery, or where the lease failed to indicate the place for payment (but payment was otherwise timely), or where the third party check tendered as rent was returned for insufficient funds. *Id.* (citations omitted). Additionally, a court may decline to grant cancellation of a lease to the lessor where the lessee justifiably retained a portion of the rent because the lessor had failed to make required repairs. *Plunkett v. D. & L. Family Pharmacy, Inc.,* 562 So.2d 1048 (La.App. 3d Cir.1990); *KPW Associates v. S.S. Kresge Co.,* 535 So.2d 1173 (La.App.2d Cir.1988), *writ denied* 537 So.2d 1167 (La.1989).

In addition to these instances in which the court may exercise its discretion to deny dissolution of the lease, the landlord's right to eviction for nonpayment of rent is vitiated if he fails to give proper notice. *Versailles Arms Apartments v. Pete,* 545 So.2d 1193 (La.App. 4th Cir.1989). His right to eviction for late payment is also vitiated if he customarily accepts late rental payments, *id.,* though the estoppel effect of whatever custom of accepting late rental payments is destroyed when the lessor notifies the lessee that the rent must be thereafter paid promptly. *Farmers Gas Co., Inc. v. LaHaye,* 195 So.2d 329, 330 (La.App. 3d Cir.1967). And even where the lessor gives proper notice of eviction, if he accepts a late rental payment after the date of the notice of eviction, he has waived his right to immediate eviction

and must send a new notice.  *Housing Authority v. Burks,* 486 So.2d at 1069;  *West End Landing, Inc. v. Board of Levee Comm'rs of the Orleans Levee Dist.,* 299 So.2d 418 (La.App. 4th Cir.1974).

Chastant established that he was not in the habit of accepting late payments, he served Headrick with proper notice of default and eviction, and he did not accept any late payments after serving notice.  Thus, the lower court's holding that Headrick properly terminated both leases is AFFIRMED.