676 So.2d 639 (1996)
QUINN PROPERTIES, INC., Quinn Management, Inc., Richard H. Quinn, Patrick J. Quinn, Robert G. Quinn, David R. Price, James P. Price, Robert C. Hicks, William C. Hicks and Joseph H. Hicks, Jr., Plaintiffs-Appellees,
v.
SABINE RIVER REALTY, INC., Defendant-Appellant.
No. 95-1714.
Court of Appeal of Louisiana, Third Circuit.
May 29, 1996.
*640 William Joseph Mize, John Frederick Wadsack, Lake Charles, for Quinn Properties, Inc. et al.
Rick J. Norman, Lake Charles, for Sabine River Realty, Inc.
Before YELVERTON, KNOLL and COOKS, JJ.
COOKS, Judge.
The defendant/lessee appeals a trial court judgment evicting it from certain property leased by plaintiffs/lessors and ordering it to deliver possession of the property to them.

PERTINENT FACTS AND PROCEDURAL HISTORY
The parties stipulated to the underlying facts. On December 14, 1945, the plaintiffs' ancestors in title, Mrs. Gladys Bingham Price, B.E. Quinn, Bertha Spears Quinn and B.E. Quinn, Jr. leased to Levingston Shipbuilding Company (Levingston), for a term of 99 years, a tract of land described as a certain forty-acre tract of land, more or less, out of the southeast portion of factional Section 25, Township 11 South, Range 14 West, Louisiana Meridian (the Quinn property). The lease requires the lessee to "pay all ad valorem taxes lawfully levied and assessed against said land by said State and parish as the same accrue and become exigible ..." *641 In 1990, following the bankruptcy of Levingston, Offshore Pipeline, Inc. (OPI) acquired Levingston's interest in the Quinn property, as well as an interest in two contiguous tracts of land. OPI employed Arterburn and Associates (Arterburn) to review and approve the property tax bills for the Quinn property as well as other properties. In 1995, OPI merged with J. Ray McDermott, Inc. (McDermott), who transferred its interest in the Quinn property and the contiguous tracts to Sabine Realty, Inc. (Sabine).
From 1945 through 1989, the lessee paid all taxes when they became due as required by the lease. Tax notices for 1990-1993 were sent to Arterburn. In 1990, the lessee failed to pay the taxes on the Quinn property. On March 21, 1991, Arterburn was notified the Quinn property would be sold for failure to pay the 1990 taxes. On June 5, 1991, a 15% undivided interest in the Quinn property was sold at a tax sale for the payment of the 1990 taxes. On July 26, 1991, Arterburn was notified the Quinn property had been sold and could be redeemed for $137.99. The lessee also failed to pay the taxes on the Quinn property for the years 1992-1994. The Quinn property was again sold for non-payment of the 1992 taxes. The plaintiffs redeemed the property for the 1992 taxes, and requested the assessor forward future tax notices to them.
We note, tax notices for the contiguous property for the years 1990-1993 were sent to Arthur Anderson. OPI paid the taxes on the contiguous tracts for the years 1991-1993. The contiguous tracts were sold for non-payment of the 1990 taxes but redeemed by OPI.
On August 15, 1995, citing the lessee's failure to pay taxes as required by the lease, the plaintiffs filed a Rule to Show Cause Why Possession Should Not Be Delivered, seeking the eviction of the lessee from the property and delivery of possession of the Quinn property to them. After hearing, the trial judge rendered judgment in favor of the plaintiffs ordering the lessee evicted and directing it to deliver possession of the Quinn property to the plaintiffs. The lessee appeals.

JUDICIAL CONTROL
The lessee first argues the default was inconsequential and did not substantially impair the interest of the lessors. Thus, it contends the trial court should have exercised "judicial control" and refused to cancel the lease. Further, lessee asserts its attempt to tender the taxes and the property interest (of which lessee had acquired ownership) required the judge to validate the lease.
Cancellation of leases is not favored in Louisiana law. Ergon, Inc. v. Allen, 593 So.2d 438 (La.App. 2 Cir.1992); KPW Associates v. S.S. Kresge Co., 535 So.2d 1173 (La.App. 2 Cir.1988), writ denied, 537 So.2d 1167 (La.1989).
... Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him.
* * * * * *
Cases which have applied judicial control of leases generally involve circumstances where a lessee has made a good faith error and acted reasonably to correct it. For examples see Brewer v. Forest Gravel Co., supra, [172 La. 828, 135 So. 372 (1931)], (lessee withheld a portion of the rent to pay severance tax in good faith); Edwards v. Standard Oil Co., 175 La. 720, 144 So. 430 (1932), (rent was mailed on time, but was late due to faulty mail delivery); Baham v. Faust, 333 So.2d 261 (La.App. 1st Cir.1976), (rent was eight days late and lease provided no place for payment), Tullier v. Tanson Enterprises, Inc., supra [359 So.2d 654 (La.App. 1st Cir.1978)], (rent was late due to a malfunction in the bank's transmittal device); Housing Authority of the City of Lake Charles v. Minor, supra [355 So.2d 271 (La.App. 3d Cir. 1977)], (rent was paid timely with third party check from lessee's employer, but the check was returned for insufficient funds); Atkinson v. Richeson, supra [393 So.2d 801 (La.App. 2d Cir.1981)], (rent was 15 days late because husband thought wife had paid the rent).
Ergon, Inc., 593 So.2d at 440. (Citations omitted.) *642 As stated in Select Properties, Ltd. v. Rando, 453 So.2d 980, 982 (La.App. 4 Cir.1984): "Judicial control is an equitable doctrine by which the courts will deny cancellation of the lease when lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact."
However, the lessee's breach in this case does not qualify as the kind of minor breach which can be overcome by a tender. Because the lessee's failure to pay property taxes, and to redeem the property when notified led to a partial loss of ownership for the plaintiffs, we cannot say the trial judge erred in concluding the breach was not of minor importance or based on a good faith mistake of fact. The breach was caused directly by the fault of the lessee. Additionally, the lessee did not attempt to remediate the situation by tendering return of the 15% ownership interest (which it had acquired in its own name) until October 6, 1995, after suit was filed and only a few days before the hearing on the eviction. As the trial judge stated in his written reasons for judgment:
This court finds that the initial good faith error in hiring an agent of questionable ability was aggravated by not reviewing the agent timely or in depth from 1990 and into 1993, not being alert to problems suggested by the need to redeem contiguous property, and allowing two tax sales to take place which resulted in the loss of 15% of the subject property, which loss would have been greater had the plaintiffs, not the defendant interests, [not] been alert. Thus the breach of the lease was not of minor importance, was caused by the fault of the defendant interests, and was not caused solely by a mistake of fact.
Lessee further argues La.Civ.Code art 2014 forbids dissolution of the lease. La. Civ.Code art 2014 provides: "A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee." This court finds loss of ownership is a substantial impairment of the plaintiffs'/lessors' interest in the Quinn property and in the lease. Therefore, La.Civ.Code art 2014 does not prevent dissolution of the lease.

EQUITABLE ESTOPPEL
The lessee next urges the plaintiffs are equitably estopped from evicting it from the property because the plaintiffs failed to evict it at the time of the breach and then prevented lessee from paying taxes by having the tax notices sent to them instead.
Had the plaintiffs accepted rent, or payment of taxes from the lessee, we might entertain defendant's argument that they waived the previous breaches. See Edenborn Partners Ltd. Partnership v. Korndorffer, 94-891 (La.App. 5 Cir. 3/1/95); 652 So.2d 1027, writ denied, 95-1234 (La. 6/23/95); 656 So.2d 1032. However, this is not the case before us. The plaintiffs did not accept payments from the lessee once they learned the lessee was not paying the taxes on the property. Nor do we find plaintiffs' action in having tax notices sent to them relieved the lessee of the obligation to pay those taxes. The lease required the lessee to pay taxes. The lessee was aware of this requirement. It knew taxes were payable yearly. The obligation was not dependant on notification. When lessee did receive notices it failed to pay. It is nonsensical for lessee now to argue it did not honor the only contractual obligation imposed on it by terms of the lease because plaintiffs, only after discovering its failures, requested notification of assessments on their property to avoid future losses through tax sales. The trial judge did not err in failing to apply the doctrine of equitable estoppel in this case.

ABUSE OF RIGHTS
Finally, lessee asserts plaintiffs abused the lease rights it held by seeking to evict it. In Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693, 697 (La.App. 3 Cir.), writ denied, 394 So.2d 275 (La.1980), we said the main criteria for applying the abuse of rights doctrine are:
(1) The exercising of rights exclusively for the purpose of harming another or if the predominant motive is to cause harm;
(2) The non-existence of a serious and legitimate interest that is worthy of judicial protection;

*643 (3) The right has been used in violation of moral rules, good faith, or elementary fairness, or
(4) The holder of the right exercised the right for a purpose other than for which the right was granted.
After reviewing the record in this case, we cannot say the conduct of plaintiffs meets the criteria for application of this doctrine.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant/lessee.
AFFIRMED.