PRESTON H. HUFFT, Judge Pro Tem.
A landlord brought this summary proceeding to evict his tenant from certain leased premises for violation of the terms of the lease. The tenant appeals from the lower court’s ruling ordering his eviction.
The parties entered into a written lease covering certain premises in the City of New Orleans. The lease was for a period of sixty four months and was to terminate on December 31, 1972 unless the lessee, in writing, exercised his option to renew at least sixty days prior to the expiration date of the lease. On October 30, 1972 the lessee, by registered mail, exercised his option to renew, this registered letter was not picked up by the lessor and was returned to the lessee. On November 3, 1972 the lessor, by certified mail, notified the lessee that the option to renew had not been exercised, that the lease would be terminated as of December 31, 1972 and if the premises were not vacated by that date legal proceedings would be instituted. Later, the lessor discovered that the October 30, 1972 *780 registered letter from the lessee was, in fact, a timely exercise of the option to renew the lease.
Under date of November 22, 1972 the lessor, through his attorney, advised the lessee, by certified mail, of the following violations of the lease and the action to be taken if the violations were not corrected:
“1. That all rent payments shall be due on the first day of each and every month at Mr. Chevalier’s office at 2401 Orleans Avenue. A late payment of even one day will not be accepted and any such late payment will be refused and the lease terminated immediately.
2. There will be no further use of the premises that is considered unlawful or that tends to injure or depreciate the property. Any arrest made on the premises for violation of any city ordinance or state law will be considered a violation of this condition of this lease.
3. You shall produce evidence no later than IS days from receipt of this letter that you have in force a policy of liability insurance to the extent of $25,000.00 for each person, $50,000.00 each occurrence. Failure to provide and maintain this coverage at all times will result in termination of this lease.
This letter constitutes the required 15 days notice under the lease that you are in violation of the terms of the lease and that any further breach is outlined above will be acted upon immediately to cancel the lease and to have you evicted.”
By regular mail, a copy of this communication was also sent to lessee’s attorney and the sub-lessee. This November 22, 1972 communication was not delivered to the lessee because the addressee “moved-left no forwarding address.” On December 1, 1972, the lessor sent to the lessee another certified letter, in which was enclosed the November 22, 1972 communication. This certified letter of December 1, 1972 was received by the lessee on December 7, 1972.
In a letter dated December 19, 1972, the lessee acknowledged receipt on December 7, 1972 of the December 1, 1972 letter from the lessor setting forth the violations of the lease, and with respect to the production of evidence of the insurance advised as follows:
“I am answering this letter within fifteen days from receipt of your letter to advise you that I have tried to provide the O.L.T. insurance that the lease demands but I have been unable to place it with any insurance company as of present date but I will continue to try and place this O.L.T. coverage with some insurance company. * * ”
The lessee also acknowledged that he had discussed the matter with his attorney and asked for the cooperation of the lessor in helping to place the insurance and for additional time in which to place the insurance. This request for assistance was denied.
On December 23, 1972, the day after the fifteen day period had expired, the lessor, by certified mail, advised the lessee that the lease had been terminated because of the failure to “produce evidence of liability insurance as required by your lease” and notified the lessee and sub-lessee to vacate the premises in five days. On December 26, 1972 the lessee was successful in placing the insurance. On January 12, 1973, the lessor filed the Rule to Evict, which is the subject of this appeal.
The lessee has briefed and presented for consideration the following questions :
1. Was the lessee required to maintain liability insurance on the leased premises ?
2. May a lessor evict a lessee for failure to provide insurance after a 15 day notice as provided for in the lease if the lessor has not required the lessee *781 to maintain the insurance coverage for a period of five years?
3. After serving the IS day notice of the violation of the lease for failure to provide insurance coverage, may the lessor ignore the lessee’s request for assistance in obtaining the insurance coverage or for additional time to secure the insurance ?
We answer all of these questions in the affirmative.
The lease in question is a form lease, purchased from a local stationery concern, which contains the following provision:
“If there are any elevators, lifts, machinery, glass or plate glass on premises, the care, maintenance and repairs of same are assumed by Lessee, together with all liability or claims for damages, and Lessee shall maintain liability insurance to the extent of _ and plate glass insurance as an additional safeguard.”
In executing the lease before us the lessor and lessee inserted by typewriter the figures “$2S,000.00/$50,000.00” in the blank space and lined out with the letter “X” the last seven words of the provision, namely: “plate glass insurance as an additional safeguard.”
The lessee contends that the requirement to furnish liability insurance is conditioned upon the existence of elevators, lifts, machinery, glass or plate glass on the premises and since there is no evidence in the record to indicate, the existence of these items, the lessor has not proven the failure to provide the insurance was a violation of the lease. The lessor’s position is that the requirement of lessee to maintain liability insurance is not conditioned upon the existence of elevators, etc. but the lessee agreed to carry liability insurance in addition to accepting responsibility for the care, maintenance and repairs of any elevators, etc. — liability insurance was not a conditional requirement, it was absolute. Lessor further points out that the figures “$25,000.00/$50,000.00” were inserted by typewriter after agreement was reached as to the amount of insurance to be carried and at no time during his testimony or at any time prior to appeal did lessee question the requirement that he was to furnish the liability insurance.
We hold that the parties to the lease intended that liability insurance be furnished for the leased premises and there is no better evidence of the intention of the parties than lessee’s own admission in his letter of December 19, 1972 that he was making every effort “to provide the O.L.T. insurance that the lease demands.”
Lessee’s defense to the Rule to Evict is that the lessor should be estopped from enforcing the provision of the lease requiring liability insurance because of lessor’s failure for five years to take affirmative action to require the insurance. Lessor testified on the rule that he had on several occasions requested the insurance from both the lessee and sub-lessee. In the present case, the lessor did not, without notification, seek to immediately cancel the lease because of the failure to furnish evidence of the insurance coverage. Instead, in accordance with the following specific provision of the lease:
“Should the lessee at any time violate any of the conditions of this lease * * and should such violation continue for a period of fifteen days after written notice has been given lessee, then at the option of the lessor, * * and Lessor shall have the further opinion * * to immediately cancel this lease *
the lessor sent the lessee a written notification of the specific violation and gave him the fifteen day period, that had been agreed on when the lease was executed, in which to furnish evidence of insurance coverage. Thus, the lessor did every thing that was required of him under the lease. If the lessee had furnished evidence of insurance coverage within the fifteen day *782 period the lease could not have been can-celled on those grounds just as it could not have been cancelled if the lessor had not given the fifteen day notice required by the lease.
Lessor’s failure to take affirmative action because of the non-performance of the lessee did not mislead the lessee or cause him to act to his prejudice. The lease required the insurance and lessee simply didn’t act because he had not been forced to comply. When the lessor decided to specifically enforce the provisions of the lease, he acted in accordance with the procedure set forth in the lease and the lessee’s failure to secure the insurance coverage within the specified period can not be attributed to any fault on the part of the lessor.
The case of Jourdan v. Randall, 190 So. 2d 469 (La.App. 1st Cir., 1966) upon which the lessee relies is distinguishable from the case before this Court. In Jourdan, the lessor acquiesced in actions that had irrevocable consequences — altering and remodeling the house, construction of a fence, demolishing of a barn, vacating the premises and allowing others to live there without written permission — and then, at a later date, tried to use these past violations as the basis for revocation of the option to purchase the property. The lessee, in the Jourdan case, was misled into believing his actions were permissible and when he attempted to enforce his option to purchase, he was confronted with the proposition that his past transgressions of the agreement, in which the lessor had acquiesced, would bar the exercise of his rights. Clearly, the court did not allow such a retroactive disapproval to be given to actions, which at the time of commission were acquiesced in by the lessor. In the case before this Court, the lessee is not being penalized for his past non-performance. He was called upon to conform to the terms of the lease in accordance with the specific notification provision of the lease. The estoppel effect of whatever customs had developed, of not requiring the insurance coverage, was destroyed when the lessor gave the fifteen day written notice in accordance with the lease.
Finally, the Court must consider whether the lessor was bound under the lease to assist the lessee in placing the liability insurance or to grant the lessee an additional period of time in excess of the fifteen day period provided for in the lease. The District Judge in his Reasons for Judgment, dictated from the bench, noted that he was bound by the terms of the written lease and so is this Court. There is nothing in the lease which requires the lessor to assist in the obtaining of insurance coverage or to grant an extension of time in which to obtain the insurance.
Accordingly the judgment of the lower court is affirmed. Lessee-appellant is to pay the cost of this appeal.