453 So.2d 980 (1984)
SELECT PROPERTIES, LTD.
v.
Peter RANDO and Anna Perigoni, d/b/a Rando's Bar & Game Room.
No. CA-1606.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1984.
Rehearing Denied August 24, 1984.
Jacques A. Sanborn, Daniel L. Dysart, Fernandez & Dysart, Chalmette, for appellant.
Marcel J. Gueniot, Chalmette, for appellees.
Before SCHOTT, LOBRANO and WARD, JJ.
LOBRANO, Judge.
An eviction rule was brought by Select Properties Ltd., the managing partner of *981 Cinema Center Partnership, (lessor), against Peter Rando and Anna Perigoni d/b/a Rando's Bar and Game Room (lessee). The trial court held that lessees were not in default of the lease, and lessors have perfected this appeal.
On November 13, 1979, lessees entered into a lease agreement for certain space in a shopping center located in St. Bernard Parish in order to operate a lounge and game room. The shopping center on which the leased property is located was later sold to Cinema Center Partnership, the current lessor, who acquired through assignment the rights to all leases of the tenants within the shopping center. Lessor, through its managing partner, Select Properties, LTD., sent a letter to lessees on June 10, 1983, requesting evidence of public liability, property damage, fire and extended coverage, and workmen's compensation insurance as per Article 17.1 of the subject lease.
Specifically the letter stated in pertinent part:
"On page 4 Article 17.1 of your lease requires you to at all times maintain in full force an insurance policy of public liability, property damage, fire and extended insurance coverage with respect to the leased premises, the air conditioned walk, and the side walk in front of your business. Please provide us with a certificate of insurance naming Cinema Center Partnership and Select Properties, Ltd., as additional insured for the amount stated in Article 17.1. Also we need a copy of your workmen's compensation policy as stated in the same Article.
Failure to comply with these requests in time allotted by the lease, will subject the lessee to the remedies provided for under the terms and conditions of the lease.
If there are any questions please do not hesitate to call us at 455-5454."
Lessees received the aforementioned letter on June 14th and testified at trial they sought to comply with its terms by attempting to obtain the requested coverage and certificates of insurance from their insurance agent.
On July 13, 1983 having not yet received the evidence of insurance requested in the June 10th letter nor having been informed of any attempt being made by lessee to obtain such insurance, lessor had a notice to vacate the premises served, and put lessee in default of the lease. Lessee admits that as of that date (July 13, 1983) the requested coverage had not yet been obtained and that no certificates of insurance or binders had been sent to lessor. They argue however, that their good faith effort to obtain such evidence and coverage should estop lessor from placing them in default.
The record reveals that on the date of trial, lessor was given evidence of workmen's compensation insurance, and evidence of it being named as a lost payee on the general liability policy. The effective date of the policy however was after the 15 day grace period provided for in the lease.
The pertinent provisions of the lease agreement are as follows:
Article 17.1
"For the mutual protection of Lessor and Lessee, Lessee agrees to at all times maintain in full force a policy of public liability and property damage insurance with respect to the leased premises, the air conditioned walk or the sidewalks in front of and business operated in the leased premises in the minimum amounts of $100,000 per person, $300,000 per accident and $50,000 for property damages. Further Lessee shall, at its expense, maintain fire and extended insurance coverage in an amount adequate to cover the cost of replacement of all fixtures, contents, decorations and improvements installed by Lessee or which Lessee is obligated to maintain and replace. All policies of insurance will name Lessor, and mortgagee, person, firm or corporation designated by Lessor, and Lessee as insured, and shall contain a clause that the insurer will not cancel or change the insurance without first giving Lessor thirty days' written notice. Lessee *982 waives and each policy shall also contain a waiver of subrogation of the insurer against Lessor for any reason whatsoever. The insurance shall be approved by Lessor and a copy of the policy or a certificate of insurance shall be delivered to Lessor. Lessee shall, at Lessee's expense, maintain a workmen's compensation policy in the minimum amount necessary to meet the requirements of any applicable workmen's compensation act, and a copy of the policy or a certificate of insurance shall be delivered to Lessor."
Article 27.1 provides in part:
"Any of the following shall constitute a default by lessee: (a) failure to pay any rental or additional rental, provide the insurance required by this lease, (emphasis ours), pay the premiums for such insurance ... (b) any violation at any time of any other condition of this lease if such violation continues for fifteen days after written notice of such violation is mailed by lessor to lessee ..."
A lessor's or lessee's failure to fulfill the obligations of their lease contract may give cause for its dissolution and the trial judge cannot order any delay of its dissolution. La. C.C. Art. 2729. It is well established in our jurisprudence that the lessor possesses the right to rescind a contract of lease for the breach of one of its covenants despite the fact that he may not sustain any loss by its breach. Acosta v. Hotard, 274 So.2d 859 (La.App. 4th Cir. 1973). Also, the fact that the lessor may not have required the lessee to maintain each and every item required under the lease does not estop him from enforcing same where his actions did not mislead or prejudice the lessee. Chevalier v. Duvigneaud, 292 So.2d 779 (La.App. 4th Cir. 1974).
It is clear to this Court that lessees, at the time they received the June 10, 1983 letter were not in compliance with the insurance requirements of the lease. It is also clear that on July 13, 1983, the date of the eviction notice, lessees still were not in compliance. Once the notice was given, this Court is of the opinion that lessees had fifteen days within which to comply. Failure to do so resulted in a breach of the lease for which lessor could seek cancellation. See, Ernst Food Mart, Inc. v. Jackson-Atlantic, 405 So.2d 1272 (La.App. 4th Cir.1981), where lessees failure to comply within ten days resulted in a breach of their lease. We find the language expressed in Chevalier v. Duvigneaud, 292 So.2d at 781, 782 to be appropriate in this case, and we quote as follows:
"... the lessor sent the lessee a written notification of the specific violation and gave him the 15 day period, that had been agreed on when the lease was executed, in which to furnish evidence of insurance coverage. Thus, the lessor did everything that was required of him under the lease. If the lessee had furnished evidence of insurance coverage within the fifteen day period, the lease could not have been cancelled on those grounds just as it could not have been cancelled if the Lessor had not given the fifteen day notice required by the lease.... When the Lessor decided to specifically enforce the provisions of the lease, he acted in accordance with the procedure set forth in the lease and the lessee's failure to secure the insurance coverage within the specified period cannot be attributed to any fault on the part of the lessor."
Lessee argues that its good faith efforts to obtain the required insurance should prevent cancellation of the lease on an equity basis and that the doctrine of judicial control should apply. We disagree. Judicial control is an equitable doctrine by which the courts will deny cancellation of the lease when lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact. See, Atkinson v. Richeson, 393 So.2d 801 (La.App. 2nd Cir.1981); Brewer v. Forest Gravel Co., 172 La. 828, 135 So. 372 (La.1931). The provision of the lease requiring various types of insurance is not of minor importance but is a major factor in maintaining the lease. The testimony of *983 lessor's representative convinces us of that fact. Furthermore, the record is clear that lessor did everything that was required of it under the terms of the lease, and lessee failed to comply.
Accordingly the judgment of the lower court is reversed, the lease between lessor and lessee is terminated, and lessee is ordered to vacate the premises in accordance with law.
REVERSED.