811 So.2d 1154 (2002)
Ronnie ROGERS d/b/a Lakeside General Mdse.,
v.
RESTRUCTURE PETROLEUM MARKETING SERVICES.
No. 01-1396.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
*1155 T. Taylor Townsend, Kelly, Townsend & Thomas, Natchitoches, LA, for Plaintiff/Appellant: *1156 Ronnie Rogers d/b/a Lakeside General Mdse.
Ronald E. Corkern, Jr., Corkern & Crews, Natchitoches, LA, for Defendant/Appellee Restructure Petroleum Marketing Services.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and OSWALD A. DECUIR, Judges.
YELVERTON, J.
Ronnie Rogers d/b/a Lakeside General Merchandise, a convenience store in the Creston Community of Natchitoches Parish, filed a rule to evict its lessee, Restructure Petroleum Marketing Services, Inc. (RPMS), and to declare their Commission Marketing Agreement terminated by default. The lessee provided and maintained the gasoline pumps and supplied the gas for sale at the convenience store. The trial court rejected the demands of Rogers resulting in the present appeal. We reverse and render.
RPMS was the successor of Petron, Inc., in a "Special Purpose Lease" that Rogers had entered into with Petron on July 8, 1981. The lease was prepared by Petron and was for a term of ten years with the right to renew for successive 15 year terms. It was renewed in 1991. The purpose of the lease was: "to give the Lessee the exclusive right to install and maintain equipment and facilities for the sale of gasoline on the leased premises." When Rogers signed the first lease, the pumps were already about ten years old.
In connection with the lease and on the same day, the parties signed a "Commission Marketing Agreement" which was identified in the lease as determining the commission to be paid to Rogers, the lessor, as consideration for the lease. One of the listed obligations of RPMS under this agreement was to "[f]urnish all labor and materials necessary for the maintenance of said gasoline dispensing equipment, unless such maintenance is occasioned by the negligence or willful misconduct of Marketer [the convenience store] or its employees."
The gasoline dispensing equipment at the store consisted of three pumps, one for regular, one for plus, and one for premium. On January 23, 1999, the regular pump quit working. Rogers called Ronnie Schellenger, the territory manager for RPMS. Schellenger called Perry & Son, an independent contractor that specialized in repair of this equipment. Perry & Son determined that the problem was with an underground check valve. The repair looked to be an expensive and time-consuming undertaking. This was an eventuality not covered by any contract provision. From the record, we can only speculate whether, had the problem in fact been underground, the parties would have been compelled to renegotiate their contracts and start anew. Seven weeks elapsed while RPMS was deciding what to do. On March 13, 1999, a second opinion revealed that it was not an underground problem after all but merely a switch on the pump. The repair was done immediately, taking only a couple of hours at a cost of less than $500.
In the meantime, however, Rogers sent RPMS a handwritten notice of default by certified mail on February 23, 1999. This was followed on March 11, 1999, by a written demand by Rogers' attorney for RPMS to vacate the premises.
Rogers filed this rule to evict RPMS claiming it was in default of the lease. *1157 The trial court denied the rule for eviction finding that Rogers failed to prove a material breach of the lease so as to justify cancellation of the lease. We quote the findings of fact from the trial court's reasons for judgment as follows:
Mr. Rogers testified that the pump that dispenses regular gasoline quit working on January, [sic] 23, 1999. There had been problems with other pumps around the first of the year, and on other occasions in the past. However, this breakdown seems to be the proverbial "straw that broke the camel's back" insofar as Mr. Rogers was concerned, and his frustration with defendant's inability to resolve this latest problem for approximately seven weeks, led to this legal proceeding.
The evidence reveals that defendant responded on January 24, the very next day. According to exhibit 4, defendant allowed plaintiff to begin selling plus gasoline at the price of regular, with plaintiff keeping the regular commission. Defendant absorbed the loss of the higher priced fuel being sold at the lower price. This continued until January 30, and when the plus fuel ran out, and then regular fuel was placed in the plus tank and sold through the plus pump as regular.
. . . .
Defendant does not do its own maintenance, but instead contracts the work out to a company specializing in it.
The problem with the repair was that the contractor making the initial inspection concluded that a repair needed to be made to underground equipment. It would have been quite expensive to undertake this operation, and so repair attempts were delayed. Another party later determined that to be wrong, and the actual problem was found and repaired in a couple of hours or less. However, it took seven weeks to get to this point. A representative of defendant acknowledged at trial that their initial contractor had caused them this problem, due to the misdiagnosis.
There was testimony at trial that the suit, filed June 2, 1999, had languished in great part because of sporadic negotiations between the parties to resolve the matter. Plaintiff acknowledged that he has been contacted by other petroleum distributors, who want to replace defendant, and defendant argues that this is a motivation for plaintiff's suit.
It is obvious to the Court that the parties to this contract are unhappy with each other for multiple reasons. One problem is the fact that the pumps are over 30 years old, and are frequently breaking down. This is a source of irritation to Mr. Rogers. Also, it appears that plaintiff is not one of defendant's larger volume customers, and so defendant's representatives may not always pay as much attention to plaintiff as he feels he deserves. Also, the parties are operating under a 20 year old contract, which may not longer adequately address their needs, particularly when the equipment in place is so old.
The contractual provision on which Rogers relies in this rule to evict is found in the Commission Marketing Agreement and reads as follows:
The term of this agreement shall be the same as the term of a Special Purpose Lease entered into between the parites [sic] comtemporaneously [sic] herewith. In the event of default under this agreement or the Special Purpose Lease, either party shall have the right to terminate *1158 this agreement if the default not be corrected within five (5) days from receipt of written notice of such default. All notices of termination shall be written.
We repeat the significant dates: The regular pump went out of order on January 23, 1999. Informal notice was given immediately. Written notice of default was given on February 23, 1999. Written notice to vacate was given on March 11, 1999. The pump problem was discovered and repaired on March 13, 1999.
The trial court interpreted the contracts and the intent of the parties on the issue of repairs, to mean that RPMS was not required to correct the default within five days, but merely to respond within five days. By this reasoning, the trial court found that Rogers failed to prove a material breach of the lease which would justify termination of the lease. The court also found that Rogers did not prove he was financially damaged by the pump being out of commission for seven weeks. The trial court for these reasons denied the rule for eviction.
Rogers claims that the trial court erred in determining the intent of the parties and also in finding that there was no material breach of the lease. We agree.
A lease is a synallagmatic contract to which the laws of contracts apply in addition to particular rules governing contracts. La.Civ.Code arts. 2668 and 2669. Appellate courts apply the following standard of review when interpreting contracts:
Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (citations omitted).
Evangeline Parish Sch. v. Energy Contr., 617 So.2d 1259, 1265 (La.App. 3 Cir.), writ denied, 624 So.2d 1228 (La.1993)(quoting Borden, Inc. v. Gulf States Utilities Co., 543 So.2d 924, 928 (La.App. 1 Cir.), writ denied, 545 So.2d 1041 (La.1989)).
"The duration and the conditions of leases are generally regulated by contract, or by mutual consent." La.Civ.Code art. 2684. "Interpretation of a contract is the determination of the common intent of the parties." La.Civ.Code art. 2045. "Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La.Civ.Code art. 2048. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053.
The trial court's determination that the lease did not provide for the maintenance of the equipment was legally incorrect. The Special Purpose Lease provided that the lessee, RPMS, had the "exclusive right to install and maintain equipment and facilities for the sale of *1159 gasoline on the leased premises." The Commission Marketing Agreement, which regulated the consideration paid for the lease, provided that RPMS agreed to "[f]urnish all labor and materials necessary for the maintenance of said gasoline dispensing equipment, unless such maintenance is occasioned by the negligence or willful misconduct of [Rogers] or [his] employees." There was never any contention that the breakdown was Rogers' fault. Clearly, it was RPMS's duty to maintain the equipment. Schellenger admitted that there was no question that it was RPMS's responsibility to repair the pump. The word "default" is not defined in either the lease or the other agreement. If "default" is not otherwise defined in a commercial lease, it means the failure to perform an obligation to do. Heirs of Boudreaux v. Payne, 00-719 (La.App. 3 Cir. 12/6/00); 773 So.2d 894, writ denied, 00-3528 (La.2/16/01); 786 So.2d 102. RPMS had an obligation to fix the pump. The default language provided that upon written notice it was the responsibility of the defaulting party to correct the default within five days, and that if the default was not corrected within five days, either party would have the right to terminate the agreement.
The testimony reveals that in their past dealings with each other, the parties took literally the obligation to repair within five days, even without written notice. Except for one occasion when a pump was out of order for six days, Rogers testified that the normal response time from RPMS was 72 hours. Ronnie Schellenger for RPMS, agreed that two days was a reasonable amount of time for them to respond to a repair need. The default in the present case was the failure to maintain and repair the pumps. The pump that stopped working was the regular gas pump which accounted for sixty percent of the gas business at the store. After the pump was out of order for one month, notice was given in writing. We are aware of Louisiana Civil Code Article 2014 which declares that a contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee. That is not the case here. The loss of the biggest selling gasoline pump of the three on the lease was the failure of a substantial obligation. The lessor was not receding from the contract on a mere excuse.
Believing that the lessee's neglect was not a "material breach," the trial court excused the breach by applying the doctrine of judicial control. This doctrine is an equitable doctrine by which the courts will deny cancellation of the lease when lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact. Quinn Properties, Inc. v. Sabine River Realty, Inc., 95-1714 (La.App. 3 Cir. 5/29/96); 676 So.2d 639; Select Properties, Ltd. v. Rando, 453 So.2d at 980 (La.App. 4 Cir.), writ denied, 458 So.2d 928 (La.1984). The contractual provision requiring that the pumps be fixed in five days was not of minor importance, but was a major factor in maintaining the lease. We find that the record clearly establishes RPMS was in default and that under the terms of the contracts between them, Rogers was entitled to terminate the lease. The neglect of the lessee to perform his obligations may give cause for a dissolution of the lease, except that the court cannot order any delay of the dissolution. Louisiana Civil Code Article 2729. The parties and the court treated the lawsuit as a demand for judicial dissolution under Louisiana Civil Code Article 2013.
We also find error in the trial court's reliance on absence of proof of loss of profits as a basis for denying a cause for dissolution. It is well established in our *1160 jurisprudence that the lessor possesses the right to rescind a contract of lease for the breach of one of its covenants despite the fact that he may not sustain any loss by its breach. Select Properties, Ltd., 453 So.2d 980. Although it is questionable whether Rogers proved an actual business loss, he testified that his was the only convenience store in the community that sold gas, his place of business was about a mile from Black Lake, he had a lot of repeat business from loggers and country people in the area, and the "out of order" sign was on the pump for seven weeks. His employees testified that customers complained daily about the nonfunctioning pump.
For the foregoing reasons, we reverse the judgment of the trial court and enter judgment granting Ronnie Rogers d/b/a Lakeside General Merchandise's rule to evict Restructure Petroleum Marketing Services, Inc. The Special Purpose Lease and Commission Marketing Agreement are terminated. Restructure Petroleum Marketing Services, Inc., is ordered to vacate the premises. Costs below and on this appeal are assessed to Restructure Petroleum Marketing Services, Inc.
REVERSED AND RENDERED.