# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-566

LYNN BOUTIN

VERSUS

GEORGE RODRIGUE

************

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2000-2420
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE**
************

**JAMES T. GENOVESE
JUDGE**

************

Court composed of Marc T. Amy, Michael G. Sullivan, and James T. Genovese, Judges.

**AFFIRMED.**

**Peter J. Losavio, Jr.
Christopher W. Nielson
Ronald J. Savoie
Kent S. DeJean
Losavio & DeJean, L.L.C.
8414 Bluebonnet Blvd., Suite 110
Baton Rouge, Louisiana 70810
(225) 769-4200
COUNSEL FOR PLAINTIFF/APPELLANT:**
    Lynn Boutin

**Maria Garcia Marks**
**Joelle F. Evans**
**Kyle Schonekas**
**Schonekas, Winsberg, Evans & McGoey, L.L.C.**
**650 Poydras Street, Suite 2100**
**New Orleans, Louisiana 70130**
**(504) 680-6050**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **George Rodrigue**

**GENOVESE, JUDGE.**

In this suit for breach of contract, Plaintiff, Lynn Boutin (Boutin), appeals the trial court's judgment in favor of Defendant, George Rodrigue (Rodrigue), finding that Rodrigue was not the primary obligor on the contract. Rodrigue answered the appeal seeking additional costs incurred during post-trial proceedings and on appeal. For the following reasons, we affirm.

**FACTS**

The instant litigation was the subject of a previous appeal to this court wherein we summarized the facts as follows:

> There is little dispute concerning the facts giving rise to the execution of the contract at issue. In 1996, Boutin and Rodrigue joined with Scott Louck to form RBL Enterprises[, Inc. (RBL Enterprises)] through which they operated Café Tee George in Lafayette, Louisiana. Although the corporation never issued stock certificates, the three men divided the corporate ownership as follows: Rodrigue, sixty percent; Boutin, twenty-five percent; and Louck, fifteen percent. Rodrigue served as president of the corporation, Boutin as vice-president, and Louck as secretary. Additionally, Boutin initially functioned as the restaurant manager.

> . . .

> On December 22, [1997,] Boutin met with Rodrigue and [Bradford Cohen, the corporation's accountant,] in Cohen's office and discussed the issue of Boutin's ownership in the corporation. While the particulars of this discussion are in dispute, the litigants do agree that the meeting resulted in the hand-written agreement at issue. That agreement is reproduced as follows:

> RBL Inc Purchase of Stock from Lynn Boutin.

> Purchase of shares from Lynn Boutin–

> Representing 25% of RBL Enterprises, Inc.

> Down payment--7500 Down

1

> Monthly Pmts 3000 for eight months
>
> starting Feb 1, 1998.
>
> Payments will be guaranteed
>
> by the corporation (RBL Enterprises, Inc.)

Boutin and Rodrigue acknowledge that the two illegible signatures that follow this language are their signatures.

Contemporaneous with the contract execution, Rodrigue gave Boutin a $2,500.00 check drawn on the checking account of Café Tee George. Thereafter, Rodrigue paid Boutin $5,000.00 by a check dated April 3, 1998, and $3,000.00 by a check dated June 1, 1998. Both of these checks were drawn on the checking account of Rodrigue Studios, LLC, a limited partnership solely owned by Rodrigue and his wife.

*Boutin v. Rodrigue*, 01-1235, pp. 2-4 (La.App. 3 Cir. 2/6/02), 815 So.2d 988, 989-990, *writ denied*, 02-699 (La. 5/3/02), 815 So.2d 823.

On June 5, 1998, Café Tee George was destroyed by a fire, and the business ceased to exist. Boutin did not receive any additional payments from then insolvent RBL Enterprises. As a result, Boutin instituted the instant litigation against Rodrigue, asserting that Rodrigue was personally liable under the contract for the remaining balance of $21,000.00.

As noted, this matter was previously before this court following the trial court's grant of a summary judgment in favor of Rodrigue. Rodrigue asserted, in support of his motion for summary judgment, that it was RBL Enterprises, as opposed to Rodrigue in his personal capacity, that agreed to purchase Boutin's stock. "The trial court found that there existed no issue of material fact and that the contract was 'between solely the corporation and Mr. Boutin.'" *Id*. at 990. On appeal, this court found the contract to be ambiguous; consequently, we held that there were genuine issues of material fact precluding summary judgment. This court, therefore, reversed

2

the trial court's grant of summary judgment in favor of Rodrigue, which dismissed Boutin's suit, and remanded the matter to the trial court for further proceedings.

Following a trial on the merits, the trial court found in favor of Rodrigue and signed a judgment consistent therewith on November 28, 2006. It is from this judgment that Boutin appeals. Rodrigue answered the appeal "to request the award of additional costs incurred in the post-trial and appellate proceedings." For the following reasons, we affirm.

## ISSUE

The sole issue presented for our review is whether the trial court erred in finding that George Rodrigue was not the primary obligor on the contract.

## LAW AND DISCUSSION

Appellate courts apply the following standard of review when interpreting contracts:

> Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. (citations omitted).

*Evangeline Parish Sch. [Bd.] v. Energy Contr.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (*quoting Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)).

*Rogers v. Restructure Petroleum Mktg. Serv.*, 01-1396, p. 4 (La.App. 3 Cir. 3/6/02), 811 So.2d 1154, 1158.

In the prior proceedings before this court, we found that the trial court erred in finding, as a matter of law, that the contract at issue was clear and unambiguous.

3

Specifically, we found that:

> the contract does not clearly designate the parties. The language of the contract suggests that a party other than the corporation is the obligor. In fact, the terms of the contract provide that payment of the obligation would be *guaranteed* by the corporation. Furthermore, the contract does not provide evidence of corporate authorization for Rodrigue to bind the corporation to the stock repurchase.

*Boutin*, 815 So.2d at 991.

Boutin argues that the contract provides that Rodrigue, as opposed to RBL Enterprises, is the primary obligor on the contract. According to Boutin, Rodrigue signed the document to purchase Boutin's shares of stock in RBL Enterprises in his personal capacity; consequently, he is personally liable for the remaining balance of $21,000.00. We find that the evidence in the record does not support Boutin's contention.

The document signed by the parties begins with the words "RBL Inc Purchase of Stock from Lynn Boutin." No other purchaser is identified therein. Subsequently, the document provides that "[p]ayments will be guaranteed by the Corporation (RBL Enterprises, Inc.)." No other guarantor is expressly named therein. Notably absent from the signed document is any reference to Rodrigue. Rodrigue is neither named nor identified in any capacity whatsoever. Moreover, nowhere in the document are there provisions imposing any obligations on Rodrigue. While acknowledging ambiguity in the contract, it is Boutin, as the plaintiff in this lawsuit, who bears the burden of proof in this case, and we agree with the trial court that Boutin failed to meet this burden. The record is void of any evidence that Rodrigue personally agreed to buy Boutin's stock or that he was personally guaranteeing RBL Enterprise's payment of that obligation.

In addition to the express contractual provisions, this finding is supported by

4

the testimony and additional documentary evidence introduced at trial. Bradford Cohen (Cohen), the corporate accountant, testified that Rodrigue never expressed that he was personally buying the stock from Boutin. Further, Cohen, who was the author of the document, testified that the document's contents were to confirm the agreement that RBL Enterprises was purchasing the stock from Boutin and, by indicating therein that payments were to be guaranteed by RBL Enterprises, Cohen was confirming that Rodrigue was not guaranteeing the debt of the corporation.

Rodrigue's testimony was consistent with that of Cohen. He testified that it was RBL Enterprises that was buying the stock and that the payments were to be guaranteed by the corporation. Rodrigue explained at trial that he was the owner of sixty-percent of the stock in RBL Enterprises, that he had no need to purchase any additional stock, and that he never expressed to Boutin that he intended to do so. According to Rodrigue, Boutin's stock was being purchased by the corporation so that it could be resold to the chef of Café Tee George. Finally, Rodrigue testified that after the contract in dispute was executed, he did not receive any evidence of an additional ownership interest by him in RBL Enterprises.

The corporate income tax returns of RBL Enterprises also do not reflect a purchase of stock by Rodrigue from Boutin. The corporate income tax returns prepared subsequent to the sale likewise do not reflect a change in Rodrigue's ownership interest in Café Tee George. As explained by Cohen at trial, had Rodrigue been the purchaser of Boutin's stock, the delineation of his ownership interest as shown on the tax returns would have reflected an increase in said ownership.

Contrary to the evidence discussed above, the only evidence in support of Boutin's assertion that Rodrigue is personally liable under the terms of the contract

is the testimony of Boutin himself. However, Boutin's testimony as to the identity of the purchaser of stock, and the guarantor of the obligation therefor, is unclear and at times contradictory. Although Boutin testified that when the December 22, 1997 meeting was concluded, it was his understanding that Rodrigue was buying his stock, he later stated that it was RBL Enterprises that was "going to pay [him] the payments[,]" and that it was the corporation that guaranteed the payment. Inconsistently, Boutin later testified at trial that "the restaurant was going to send [him] the check but [Rodrigue] was guaranteeing." However, Boutin admitted that the express contractual provisions do not provide that Rodrigue was the guarantor of the payments. To the contrary, the document provides that "RBL [Enterprises] was guaranteeing the payments but George Rodrigue bought the stock."

We also note that Boutin contends that the payments made by Rodrigue in his personal capacity support his contentions herein. However, this assertion lacks merit. None of the payments made to Boutin for the purchase of his stock were made by Rodrigue in his personal capacity. It is undisputed that the first payment to Boutin of $2,500.00 was drawn on the account of Café Tee George, not a personal account of Rodrigue. The two subsequent payments of $5,000.00 and $3,000.00 were made by Rodrigue Studios, L.L.C., which is also a separate legal entity, and not by Rodrigue in his personal capacity. Thus, Boutin's contention that "the majority of the payment for the stock came from Rodrigue's personal funds" is factually inaccurate.

Boutin also argues in his appellate brief that the articles of incorporation of RBL Enterprises require that stock redemptions be authorized by the shareholders and that this corporate formality was not followed. He concludes, therefore, that Rodrigue did not have the requisite corporate authorization to bind RBL Enterprises,

6

and, consequently, Rodrigue must be the primary obligor on the contract. We disagree. Even assuming, arguendo, that corporate authorization was lacking, that in and of itself does not lead to the inevitable conclusion that Rodrigue was the primary obligor on the contract, or that he was bound by its terms in his personal capacity.

Louisiana Civil Code Article 3019 provides that "[a] mandatary who exceeds his authority is personally bound to the third person with whom he contracts, unless that person knew at the time the contract was made that the mandatary had exceeded his authority or unless the principal ratifies the contract." In the instant case, Boutin was a shareholder of RBL Enterprises who had knowledge of the scope of Rodrigue's corporate authority and that Rodrigue lacked the authority to enter into the contract on behalf of RBL Enterprises. Additionally, or alternatively, RBL Enterprises, as principal, subsequently ratified the contract by making the initial payment to Boutin for $2,500.00, thereby discharging Rodrigue, the agent, from personal liability. La.Civ.Code art. 1843.

We also find no merit in Boutin's assertion that RBL Enterprises was legally unable to purchase Boutin's stock due to its insolvency. First, Boutin, in fact, did receive a payment of $2,500.00 on December 22, 1997 from RBL Enterprises. More importantly, according to the testimony of Cohen, RBL Enterprises was able to pay the debt at the time the transaction took place, and it did not become insolvent until June 1998, nearly six months after the execution of the contract at issue, when a fire destroyed Café Tee George. Thus, Boutin failed to prove that RBL Enterprises was insolvent at the time the contract in dispute was executed.

Based upon the evidence in the record, we find that Boutin failed to prove that Rodrigue, in his personal capacity, was an obligor under the contract. Accordingly,

7

we affirm the judgment of the trial court in favor of George Rodrigue and against Lynn Boutin.

## *ANSWER TO APPEAL*

In addition to rendering judgment in favor of Rodrigue, the trial court assessed Boutin with costs of the trial court proceedings. In response, Rodrigue, filed a motion to tax costs. The hearing on the motion for costs was continued by the trial court, without date, pending the outcome of the present appeal. Rodrigue now asserts in his answer to appeal that he "reserved his right to recover additional costs incurred subsequent to the trial of this matter" and requests "the award of additional costs incurred in the post-trial and appellate proceedings." It is within the province of this court to cast a party or parties with costs incurred on appeal,[1] and we do so herein.

## **DECREE**

For the foregoing reasons, we affirm the judgment of the trial court in favor of appellee, George Rodrigue.

Costs of this appeal are assessed against appellant, Lynn Boutin.

**AFFIRMED.**

---

[1]Louisiana Code of Civil Procedure Article 2164 provides as follows:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.