B GASKINS, J.
The plaintiff, Western Sizzlin Corporation, appeals from a trial court judgment in favor of the defendants, Kenneth A. Greenway, Joy Greenway Groves, Green-way Investments, Inc., J & H Enterprises, Inc., KJOY, Inc., East Gate Western Siz-zlin, Inc., and Western Sizzlin Steakhouse West, Inc., granting the defendants’ rule to evict the plaintiff from five of its restaurant properties in the Shreveport and Bossier area. For the following reasons, we affirm.
FACTS
The Greenway family owns five restaurants located on East 70th Street, Mansfield Road, and Greenwood Road in Shreveport, and on East Texas Street and Benton Road in Bossier. These were Western Sizzlin franchises, operated by the Greenways since the middle 1970s. In 1997, they entered into an agreement with the Western Sizzlin Corporation (WS), leasing the five restaurants to the compa *596 ny, which then became responsible for managing and operating them. The lease was entered on October 17, 1997, for a primary term of five years, with the possibility of renewal for three additional five-year terms. The lease initially called for a monthly rental of $30,000, with an obligation to make $500,000 in improvements within the primary term of the lease. The lease also required that WS keep the leased premises in first class condition.
WS claimed that it spent more than two million dollars remodeling the restaurants on East 70th Street, Mansfield Road, and East Texas ■ Street. The restaurants on Greenwood Road and Benton Road were not remodeled and were not profitable. In March 2001, WS representatives met with 12Kenneth Greenway to discuss plans to close those two locations and find subles-sors for them. Subleasing the properties required permission from the defendants.
The defendants alleged that WS had not abided by the terms of the lease. On March 29, 2001,- the defendants sent a letter to WS outlining the deficiencies in the company’s performance under the lease, including untimely payment of rent, problems with construction of improvements, failure to maintain leased premises in a first class condition, and failure to maintain adequate insurance. The defendant also complained that the roofs of the restaurants were not repaired timely after settlement of an insurance claim. The defendants agreed that they would consider the subleases if these areas of concern were addressed.
David Hoof, vice president of operations and Chief Operating Officer of WS, came to Louisiana and met with Kenneth Green-way concerning the problems with the various properties. Other letters were then passed between lawyers for the parties.
On July 23, 2001, Greenway again sent a letter to Hoof, outlining problems in the restaurants. Greenway cautioned that the list of items needing repair, replacement, and refurbishment was not inclusive. The list of deficiencies in the five restaurants included the need for paint, uneven flooring, leaks, missing equipment, inoperable irrigation systems, probléms with the parking lots, and dead shrubbery. He also noted damage to ceiling tiles, fences, windows, and sheetrock. Greenway pointed out that there was a lack of refrigeration and air conditioning in the Benton Road restaurant.
1 ROver a month after receiving the letter, on August 30, 2001, WS sent memos to restaurant managers with directions to deal with some of the issues. On September 21, 2001, the defendants sent a letter placing WS in default and exercising the option to terminate the lease.
Relations between the parties deteriorated and -mediation required by the lease was not successful. On October 31, 2001, WS filed suit against the defendants, seeking permission to sublet two of the properties, claiming entitlement to the proceeds from billboards placed on the property and asserting that the defendants were responsible for making repairs to the roofs on the two locations to be subleased. On November 2, 2001, the defendants countered with a suit to evict the plaintiff for breach of the lease agreement. The defendants essentially argued that WS failed to keep the premises in first class condition. The plaintiff claimed that it had abided by the terms of the lease and urged the court to apply the doctrine of judicial control to hold that it was not in default of the lease.
The matter was heard by the trial court on November 14, 2001. On November 26, 2001, the trial court entered judgment in favor of the Greenways on their claim to evict WS. The plaintiff was ordered to immediately deliver possession of the *597 premises to the defendants. In written reasons for judgment, the trial court essentially found that WS breached the lease in failing to keep the restaurants in first class condition. The court stated that the plaintiff was given written notice on July 23, 2001 of certain conditions that the defendants considered violations of the lease. The court found that the plaintiff failed to make the required repairs. It also held that |4the facts did not rise to the level to warrant judicial reformation of the written terms of the lease. According to the court, the defendants were entitled to a judgment of eviction, and ordered the plaintiff to deliver the premises. The plaintiff appealed suspensively.
BREACH OF LEASE AGREEMENT
WS contends that the trial court erred in finding that it breached the lease agreement. This argument is without merit.
The factual findings of a trial court will not be disturbed absent manifest error. Gibbs v. Harris, 35,239 (La.App.2d Cir.10/31/01), 799 So.2d 665; Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable factual basis exists for the trial court’s finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous. SDT Industries, Inc. v. Leeper, 34,655 (La.App.2d Cir.6/22/01), 793 So.2d 327, writ denied, 2001-2558 (La.12/07/01), 803 So.2d 973. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Jackson v. Lare, 34,124 (La.App.2d Cir.11/1/00), 779 So.2d 808. The fact finder’s choice between two conflicting permissible views of the evidence cannot be manifestly erroneous. Stobart v. State, through Department of Transportation and Development, supra. Where testimony conflicts, the fact finder’s reasonable evaluations and reasonable inferences of fact should not be | (¡disturbed upon review by the appellate court. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Contracts have the effect of law for the parties and may be dissolved only through consent of the parties or on grounds provided by law. Contracts must be performed in good faith. La. C.C. art. 1983.
The neglect of the lessee to fill his engagements may give cause for dissolution of the lease, in the manner expressed concerning contracts in general. See La. C.C. art. 2729.
La. C.C.P. art. 4701 provides in pertinent part that when a lessee’s right of occupancy has ceased because of termination of the lease for any reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee.
Several provisions of the lease at issue here are pertinent to our inquiry. Section 10 provides that:
Lessee will keep the Leased Premises and all components in a first class condition, and a good state of appearance and repair, reasonable wear and tear excepted, and indemnifies Lessor for Lessee’s failure to do so.
Section 16 of the lease specifies:
Lessee acknowledges that it or its agent has fully inspected the Leased Premises, is fully aware of .the physical condition thereof and hereby accepts the leased Premises in its present condition and, except as otherwise expressly stated herein, assumes full responsibility therefor. Lessor warrants that as of the *598 Effective Date, to the best of their knowledge all equipment, including HVAC, (i) is in normal operating condition and (ii) there are no major repairs (over $1,000.00) known or needed.
| (¡Section 17.2 states in pertinent part:
If any one or more of the following events of default shall occur and shall not have been remedied within the period, if any, hereinafter allowed therefor, to-wit:
Default by Lessee in the due performance or observation of any other agreement or condition contained herein which shall have continued unremedied for a period of ten (10) days after written notice thereof shall have been given by Lessor to Lessee.
In the instant case, the defendants demanded that WS be evicted due to failure to keep the leased premises in first class condition, as required by the lease. The record supports the trial court’s finding that WS breached the lease in this regard.
Testimony was presented by the parties concerning the condition of the restaurants. Kenneth Greenway testified that after a hail storm in 2001, he began to get notices that the insurance on the properties had been cancelled. Payment of the premiums was the responsibility of WS. In addition to the items outlined in Green-way’s letter of July 2001, numerous other deficiencies were noted in the restaurants. At the Greenwood Road restaurant, rain was coming through the roof in numerous places and was running down equipment left in the restaurant. The water was standing on the carpet and in the dish room. Greenway claimed that this was not due to hail damage, but due to WS failing to clean the grease filters on the roof properly. He asserted that the grease had pooled and had eaten through the tar on the flat roof of the restaurant.
On Benton Road, some equipment was missing, the roof leaked, the wallpaper was torn, there was mold, mildew, garbage, and debris all over the restaurant. All of the refrigeration units in the restaurant had been shut |7down. Parts from the exhaust hoods had been taken off according to Greenway. Greenway testified that there was mildew and blood in the meat box. He also complained that a meat smoker or barbeque pit had been removed from the premises after WS was put in default on the lease. The pit was sold to another competing restaurant.
Greenway testified that at the East 70th Street restaurant, the grass and shrubbery were killed with greasy water. Also, the roof was leaking, tiles were falling down, and there were wet ceiling tiles with mold and mildew in the ladies’ room. He also contended that some equipment was missing from this restaurant.
Bobby Jones, a former employee of the Greenways and also of WS, testified that all five restaurants were in good condition when taken over by WS, but they were no longer in first class condition. Tiles were popping up and paint was peeling. The facilities were dirty with grease “hanging and dripping” from the equipment.
According to Hoof, he met with Green-way, who did not express very many concerns. They discussed whether the plaintiff was going to renew the lease. Hoof told him the company had not yet made a decision, but was going to close two of the, restaurants. Later, Greenway conveyed concerns about maintenance issues. Hoof testified that, at Greenway’s request, he gave him the insurance money for the hail damage to the roofs and gave him a check for $10,000 to cover the insurance deductibles on the businesses. Hoof stated that some of the missing equipment belonged to other vendors 1 sand was removed when the restaurants were closed. He also said *599 that they would clean the restaurants when sublessors were found for them.
According to Hoof, the company far exceeded the amount required by the lease for improvements to the properties. He claimed that the theme of the three remaining restaurants was changed to Great American Steak and Buffet Company, also operated by WS, and that the company spent in excess of two million dollars in renovating the properties. Hoof stated that the company wishes to renew the lease with the defendants for another five-year term and possibly beyond that. He said that he thought the properties were in first class condition. According to Hoof, the company did a good job of maintaining the facilities. There were “things that needed to be continually addressed, as there is in any ongoing food facility.” He testified that he was not aware that the company had only ten days to respond to the issue raised by Greenway or the plaintiff would be in default of the lease.
Regarding the equipment that was removed from the restaurants, Hoof stated that, as he read the lease, the equipment was WS’s to do with as it wished until the termination of the lease. At the end of the lease term, all equipment owned at that time would go back to the Greenways.
The managers of the three remaining restaurants testified that they thought the facilities were maintained in first class condition, although there were some problems. They stated that they had a monthly maintenance budget and that they would address repair issues as the money became available. Repairs of more than $1,000.00 were subject to corporate approval.
13Cedric Wilson, the manager of the East 70th Street restaurant, acknowledged problems with tiles popping up, with dirty floors, and with an uneven floor due to improper remodeling. He explained that some areas of the floor were dirty because they were having tiles replaced. Wilson acknowledged that areas of the floor were uneven due to faulty installation of the carpet during remodeling. He said that they had replaced two ventilators on the fry lines and had repaired the air conditioning in the food preparation area.
Jean Schoolfield, general manager of the East Texas Street store, said that after WS took over management of the restaurants, some things were better and some things were worse. She acknowledged that now sometimes equipment was not repaired promptly and there were problems with floor drainage. She stated that the roof leaked before WS leased the property and that it continues to leak. There was also a problem with tiles popping up. In response to complaints about trash in the kitchen, she said that it was left by the back door at night. It was a safety risk to take the trash to the dumpster after hours.
Odessa C. Marshall, the assistant general manager at the East 70th Street restaurant, worked for the Greenways and continues to work for WS. She was familiar with several of the restaurants. She said that the roof on the Greenwood Road restaurant leaked and there were ovens that did not work before WS leased the property. When the Greenwood Road and Benton Road restaurants were closed, it was decided not to do deep cleaning at that time.
[inThe defendants filed into evidence photographs and several videos depicting the condition of the various properties at issue in this case. There were numerous instances of tiles that had come up or been replaced by tiles that did not match the surrounding tiles. Ventilation equipment was obviously missing parts in some of the restaurants and there were numerous roof leaks and mold and mildew problems. *600 There were also numerous instances of unclean conditions in the restaurants, especially at the two that had been closed. The Greenwood Road restaurant showed extensive leaks from the roof that were damaging the carpet, equipment and fixtures in the closed restaurant. Water was running down wood and brass food display stations and pooling on the floor. The leaks were so extensive, it appeared to be raining inside the restaurant.[1]
In arguing that it did not breach the lease agreement, WS claims that it paid the rent and made improvements far in excess of the $500,000 required by the lease. The company questions what is meant by the term “first class condition” in the lease. It urges that the defendants offered no evidence to show what condition the properties were in when the lease was entered into in 1997. Without such evidence, WS asserts that the defendants could not carry their burden of proof. The company pointed out the testimony of several managers of the various restaurants who stated that the roofs leaked and that there were various other problems with the facilities before the lease to WS.
In Regarding the definition of first class condition, the defendants cite Royal St. Louis, Inc. v. United States, 578 F.2d 1017 (5th Cir.1978). In that case, a lessee was obligated to maintain the furnishings in a hotel in first class condition. The trial court concluded that meant that the lessee is obligated to maintain the personal property in such a manner that the lessors will suffer no economic loss. Although we do not find this definition particularly helpful in this case, we find that first class condition is something more than the present state of the properties.
We reject the argument that the properties are in at least as good condition now as when the lease was commenced. WS acknowledged at the inception of the lease that the properties were in good condition with working air conditioners and with no repairs requiring more than $1,000.00. The testimony and evidence presented at trial show numerous instances of missing equipment, tiles in need of repair, unclean conditions, mold and mildew, and leaking roofs. In the Benton Road restaurant, the refrigeration and the air conditioning had been shut down. The leaks in the Greenwood Road restaurant were extensive and required immediate attention.
Even though WS did not lease properties that were in perfect condition, two of the properties have significantly deteriorated under management by WS. WS was aware of the condition of the restaurants at the beginning of the lease and was aware of the requirement that they be maintained in first class condition. The record shows that WS failed to meet this requirement of the lease.
|12WS also claims that it was never put on notice of conditions shown on some of the videos and was never given a chance to cure those conditions. The company was aware of the defendants’ claim that WS did not maintain the restaurants in first class condition. As early as March 18, 2001, a memo by WS reflects knowledge of the defendants’ complaint that the restaurants had fallen into a state of disrepair and that one of WS’s obligations was to maintain them in first class condition throughout the lease. The record shows that WS and *601 the defendants had extensive conversations regarding the condition of the restaurants and the defendants’ complaints in that regard. The parties also had a joint inspection of the restaurants. We find that WS was cognizant of the numerous complaints alleged by the defendants regarding the condition of the restaurants. The videos merely corroborated those claims, as well as the testimony of Green-way and others.
WS also argues that it was not aware that it had only ten days to repair the items complained of or that there was an issue of default of the lease. WS signed the lease containing the provisions in Section 17.2, regarding time limits. Also, a WS memo dated April 3, 2001, indicated a belief that Greenway was “angling” toward declaring WS in default of the lease and reclaiming the properties.
We reject the argument that the trial court erred in considering the deficiencies alleged in the defendants’ July 2001 letter as the standard for determining whether a default occurred. We find that WS breached its lease obligation to keep all the properties in first class condition. We find that the | 13trial court was not manifestly erroneous or clearly wrong in finding that WS breached the lease agreement and granting the defendants’ suit to evict.
JUDICIAL CONTROL
WS argues that if the trial court was correct in finding the company to be in default, the court erred in failing to exercise the doctrine of judicial control to maintain the lease. According to WS, the trial court erred in granting the eviction requested by the defendants. The company claims that it worked in good faith to satisfy the lessors. Regarding the list of repairs given to WS in July 2001, the company claims that Greenway was told that it would take one year to complete them and Greenway did not object. WS claims that the letter informing the company that the defendants considered the lease to be breached was a surprise. These arguments are without merit.
Although La. C.C. art. 2712 would seem to mandate the cancellation of a lease upon failure to comply with its terms, cancellation of leases is not favored in Louisiana law. Carriere v. Bank of Louisiana, 95-3058 (La.12/13/96), 702 So.2d 648; McCrary v. Park South Properties, 560 So.2d 38 (La.App. 2d Cir.1990), writ denied, 563 So.2d 1156 (La.1990); Huckabay v. Red River Waterway Commission, 27,-113 (La.App.2d Cir.10/12/95), 663 So.2d 414, writ denied, 95-3007 (La.3/8/96), 669 So.2d 403; KPW Associates v. S.S. Kresge Company, 535 So.2d 1173 (La.App. 2d Cir.1988), writ denied, 537 So.2d 1167 (La.1989).
Judicial control is an equitable doctrine by which the courts will deny cancellation of the lease when the lessee’s breach is of minor importance, is | Ucaused by no fault of his own, or is based on a good faith mistake of fact. Rogers v. Restructure Petroleum Marketing Services, 2001-1396 (La.App. 3d Cir.3/6/02), 811 So.2d 1154. See also Brewer v. Forest Gravel Company, 172 La. 828, 135 So. 372 (1931).
Under the doctrine of judicial control, Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease, although such a right appears to be available to him. Carriere v. Bank of Louisiana, supra; Martin Timber Company, Inc. v. Pegues, 30,361 (La.App.2d Cir.7/06/98), 715 So.2d 728, writ denied, 98-2124 (La.12/11/98), 729 So.2d 590; Ergon, Inc. v. Allen, 593 So.2d 438 (La.App. 2d Cir.1992).
*602 Cases which have applied judicial control of leases generally involve circumstances where a lessee had made a good faith error and acted reasonably to correct it. Ergon, Inc. v. Allen, supra.
WS argues that it was diligently attempting to remedy issues raised by the defendants and was in good faith in trying to comply with the lease requirements. It points out that the company spent a significant sum of money on renovating three of the restaurants and, under these circumstances, it would be inequitable to evict WS at this point.
As discussed above, WS breached its obligation under the lease to keep the properties in first class condition. Although large sums were spent to change the theme of the restaurants, in many instances, routine maintenance was neglected. While the two closed restaurants were in deteriorating condition, the open restaurants also had areas that needed [ 1Kattention. In the case of the restaurant on East 70th Street, the renovations were not done properly. As one example of this, the defendants testified that the carpeting in that restaurant was laid over uneven flooring and WS had not taken steps to remedy the defect. The manager of this restaurant acknowledged that this was a problem which needed to be remedied. However, the record fails to show that WS had taken any steps to correct the problem.
The record shows that the failure by WS to keep the properties in first class condition was not accidental, inadvertent, or isolated. Further, the breach of the obligation to keep the properties in first class condition was not a breach of minor importance, did not occur due to circumstances beyond the control of WS, and was not based on a good faith mistake of fact.
Although WS made some efforts to deal with the issues raised by the defendants, it did not proceed with diligence. The defendants pointed out numerous instances in which the equipment was not maintained or was missing. They also showed that the properties were not kept clean and had mold and mildew. There were numerous roof leaks which caused damage to the buildings and the fixtures. Had WS’s default been based upon the conditions at the three open restaurants, perhaps judicial control in maintaining the lease would be proper. But in this circumstance, where two properties were allowed to deteriorate, and where the plaintiff was obligated to keep all of the properties in first class condition, we find that the trial hfiCourt did not err in failing to apply the doctrine of judicial control to allow the lease to continue.
CONCLUSION
For the reasons stated above, we affirm the trial court ruling that WS breached its lease agreement to keep the defendants’ restaurants in first class condition. We also affirm that portion of the trial court judgment rejecting the claim of WS urging application of the doctrine of judicial control to maintain the lease. We affirm the trial court judgment granting eviction in favor of the defendants and ordering WS to surrender possession of the properties immediately. Costs in this court are assessed to the plaintiff, Western Sizzlin Incorporated.
AFFIRMED.

. We note that there was hail damage to the roofs of some of the restaurants that was not promptly addressed by WS. The company claims it gave the defendants the insurance proceeds and $10,000 to cover the deductible so that the defendants could have the roofs repaired. According to WS, any issue of leaking roofs is now the responsibility of the defendants.