# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2021

Lyle W. Cayce
Clerk

No. 20-30614
Summary Calendar

Richards Clearview, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Bed Bath & Beyond, Incorporated,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1709

---

Before Haynes, Willett, and Wilson, *Circuit Judges*.

Per Curiam:*

Richards Clearview, L.L.C. (the "Landlord") sought to evict its tenant, Bed Bath & Beyond, Inc. ("BB&B"), for failure to pay rent. The district court dismissed the eviction proceedings, holding that the equitable doctrine of judicial control applied in this case. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30614

## I.   Background

The district court's factual findings in this commercial eviction case are uncontested on appeal. We thus briefly summarize the relevant facts from the district court's findings of fact and conclusions of law. Starting in 2001, BB&B leased property in Metairie, Louisiana, from the Landlord. *Richards Clearview, LLC v. Bed Bath & Beyond, Inc.*, No. 20–1709, 2020 WL 5229494, at *2 (E.D. La. Sept. 2, 2020). Under the lease agreement, BB&B is generally obligated to pay a fixed monthly rent. *Id.* But BB&B's rent obligation can convert to a different rent amount (the "Alternate Rent") under certain circumstances. *Id.* In March 2020, the COVID-19 pandemic and associated government responses caused BB&B, along with many other stores, to close. *Id.* at *4. Thinking that such closures constituted conditions triggering the Alternate Rent, BB&B paid partial rent for April and no rent for May. *Id.*

On May 5, the Landlord sent a notice of default to BB&B's corporate headquarters. *Id.* The notice, which became effective upon receipt at BB&B's headquarters, provided that BB&B had ten days from receipt of the notice to cure the unpaid rent. *Id.* at *7. However, BB&B's corporate headquarters was closed due to COVID-19; thus, when the notice arrived on May 8, it was directed to BB&B's warehouse and a warehouse employee without authority to act on the notice received it. *Id.* at *4, *7. BB&B missed the ten-day deadline to cure the default. *Id.* at *5.

On May 19, the Landlord informed BB&B that it intended to terminate the lease effective May 26, 2020. *Id.* The next day, a BB&B employee with authority to act on the notice received the notice, and BB&B paid the outstanding rent on May 28. *Id.* at *7. The Landlord, however, had already initiated eviction proceedings in Louisiana state court on May 26 and refused BB&B's check, which it received by June 2. *Id.* at *5. With the

No. 20-30614

Landlord deciding to continue with eviction proceedings, BB&B removed the case to federal court. *Id.* The federal district court held a bench trial. *Id.* at *2. Applying Louisiana substantive law in this diversity case, the court exercised Louisiana's equitable doctrine of judicial control and denied the Landlord's request to cancel the lease and evict BB&B. *Id.* at *5, *8. The Landlord timely appealed.

## II.    Discussion

The only issue on appeal is whether the district court erred in exercising the equitable doctrine of judicial control and denying the Landlord's request to evict BB&B. We review the district court's decision to apply this doctrine for abuse of discretion. *Walker v. Chesapeake La., L.P.*, 440 F. App'x 254, 256 (5th Cir. 2011) (per curiam); *see Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (per curiam) (reviewing a district court's application of a discretionary doctrine for abuse of discretion).

Lease cancellations are not favored under Louisiana law. *W. Sizzlin Corp. v. Greenway*, 821 So. 2d 594, 601 (La. Ct. App. 2002). As a result, Louisiana substantive law permits courts to exercise the doctrine of judicial control and deny cancellation of a lease when the lessee's breach "is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact." *Id.* The doctrine generally applies in "circumstances where a lessee had made a good faith error and acted reasonably to correct it." *Id.* at 602. The district court held that the doctrine applied in this case because, assuming arguendo that BB&B breached its lease, such a breach was based on a good faith mistake of fact. *Richards Clearview*, 2020 WL 5229494, at *7. This conclusion was based on the following factual findings by the district court: There was "sufficient ambiguity in the [lease]" to justify BB&B's position that it did not breach the lease; BB&B attempted to promptly

3

remedy its deficiency by tendering payment of the outstanding rent eight days after actually receiving the notice of default; the delay in receiving the notice was reasonable because it occurred "at the height of an ongoing global pandemic that forced BB&B to shut its headquarters and operate the business remotely"; and it was the first time in almost nineteen years that BB&B was late in a rent payment. *Id.*

The district court did not abuse its discretion in applying the doctrine of judicial control here.  First and foremost, the district court did not find that BB&B defaulted, holding instead that the lease was "sufficient[ly] ambigu[ous]" to support BB&B's position that it did not breach the lease.[1] *Id.*  When such "honest doubt" exists as to the applicability of certain lease provisions, Louisiana courts "ha[ve] not, and will not, penalize a litigant lessee by dissolving a lease." *Rudnick v. Union Producing Co.*, 25 So. 2d 906, 908 (La. 1946); *Walker*, 440 F. App'x at 257 (same); *see also Midstates Oil Corp. v. Waller*, 207 F.2d 127, 131 (5th Cir. 1953) (affirming the district court's application of judicial control because there was a "legitimate dispute between the lessors and the lessee relative to a clause in the lease and there [we]re grounds for honest doubt as to the rights of the parties").  Thus, there was no abuse of discretion in exercising judicial control regarding this ambiguous lease. *See LLEH, Inc. v. Wichita Cnty.*, 289 F.3d 358, 364 (5th Cir.

---

[1] The Landlord's argument on appeal is largely premised on the erroneous assumption that BB&B defaulted on the lease, making its challenge to the district court's decision largely meritless.  Even assuming arguendo that BB&B defaulted, the Landlord's argument—that judicial control for monetary defaults is only appropriate when the lessor customarily accepts late payments or fails to give the lessee notice and an opportunity to cure—is also unsupported by case law. *See Tullier v. Tanson Enters.*, 359 So. 2d 654, 659–60 (La. Ct. App. 1978), *rev'd on other grounds*, 367 So. 2d 773 (La. 1979) (holding that the trial court did not abuse its discretion in exercising judicial control because the lessee had made good-faith efforts to cure the default, even though the trial court did not find that the lessor accepted late payments and the lessee failed to timely tender the outstanding rent after two notices and opportunities to cure).

No. 20-30614

2002) (holding that we may affirm for reasons other than those relied upon by the district court).

Even assuming arguendo (as the district court did) that BB&B did in fact default on the lease, BB&B made a "good faith error" in believing that it had not actually defaulted and then "acted reasonably to correct it" by promptly tendering payment after it actually received the notice of default. *See W. Sizzlin Corp.*, 821 So. 2d at 602; *accord Richards Clearview*, 2020 WL 5229494, at *7. Despite the twelve-day delay in receiving the notice due to COVID-19, BB&B tendered payment only ten days after the cure date provided by the notice. *Richards Clearview*, 2020 WL 5229494, at *7. Indeed, courts have held that lessees made good-faith errors and acted reasonably to correct them in similar situations. *See, e.g.*, *Atkinson v. Richeson*, 393 So. 2d 801, 805 (La. Ct. App. 1981); *Ergon, Inc. v. Allen*, 593 So. 2d 438, 439–41 (La. Ct. App. 1992); *Martin Timber Co. v. Pegues*, 715 So. 2d 728, 735 (La. Ct. App. 1998).[2] Moreover, BB&B's prompt rent payments during its almost nineteen years of leasing the property weighed in favor of applying the doctrine of judicial control. *Richards Clearview*, 2020 WL 5229494, at *7; *accord Atkinson*, 393 So. 2d at 805 (holding that the doctrine of judicial control

---

[2] In *Atkinson*, the court held that the lessee made a good-faith error in believing that the rent had been paid by his wife. 393 So. 2d at 805. The court exercised judicial control, concluding that the lessee acted reasonably to correct his error by immediately paying the outstanding rent upon discovering his error such that the check was mailed only five days after the date the lessor had set to cure the default. *Id.* In *Ergon*, the lessee's general manager erroneously thought that rental payments were paid by his company's home office because his predecessor had transferred the payment responsibility without telling him. 593 So. 2d at 439, 441. The court exercised judicial control, holding that the manager "attempted in good faith to correct its mistake by tendering the rent immediately when notified of its delinquency." *Id.* at 440. In *Martin Timber*, the lessee failed to pay rent due to a computer error but promptly corrected the error upon being notified. 715 So. 2d at 735. The court exercised judicial control because the lessee had "made a good faith attempt to pay the lease . . . , tendering payment only 16 days late." *Id.*

applied and noting that the lessee timely paid rent for the two years he leased the property); *Martin Timber*, 715 So. 2d at 735 (noting that the lessee timely paid rent for over twenty-five years).  Therefore, even assuming arguendo that BB&B defaulted on the lease, the "unusual circumstances" of this case—pandemic-related office closures causing delays in the receipt of notice coupled with prompt efforts to rectify the asserted underpayments—warranted the district court's exercise of judicial control.  *See Ergon*, 593 So. 2d at 441.

Accordingly, we AFFIRM.